IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| DANIEL M. McBRIDE<br><br>Plaintiff<br><br>v.<br><br>LUMA ENERGY, LLC; LUMA ENERGY SERVCO, LLC; CHUBB INSURANCE COMPANY; UNIVERSAL INSURANCE COMPANY; JOHN DOE; RICHARD ROE a to z; "A", "B" AND "C" INSURANCE; et. al<br><br>Defendants | CIVIL NO. 24-1554 (MAJ) |

**MOTION TO DISMISS THE COMPLAINT**

**TO THE HONORABLE COURT:**

Come now the co-defendants LUMA Energy, LLC (individually, "ManageCo") and LUMA Energy Servco, LLC (individually, "ServCo") (jointly referred to as "LUMA"), through the undersigned counsel, and respectfully state and pray:

**I.   INTRODUCTION**

On December 3, 2024, Daniel M. McBride (hereinafter referred to as "McBride" or "Plaintiff") filed the above captioned Complaint against LUMA, Chubb Insurance Company (hereinafter referred to as "Chubb") and Universal Insurance Company (hereinafter referred to as "Universal"). In essence, Plaintiff is seeking damages for Defendants' alleged negligence in connection with an **accident suffered by McBride, while he was installing a camera system below the dashboard of a pickup truck located at a LUMA warehouse**. **Docket No. 1, Complaint ¶11**.

McBride alleges that, while performing the installation at LUMA's warehouse, the truck was struck by another vehicle operated by a LUMA employee, causing injuries to Plaintiff.

1

McBride was then taken to the hospital for treatment and diagnosed with several injuries and ailments. **Docket No. 1, Complaint ¶¶ 14-16**.

Germane to the allegations of the Complaint is the fact that McBride was performing duties as an employee of Elite Tech Install (hereinafter referred to as "Elite") at the time of the accident. Elite, Plaintiff's employer, is a company that had been subcontracted by Motive Technologies, Inc. (hereinafter referred to as "Motive"), which was contracted by LUMA to install the mentioned technology in vehicles that are operated by LUMA. In other words, the **work being performed by McBride was service to his employer, a subcontractor of a LUMA contractor**. Furthermore, the work being performed was directly related to the contract between Motive and LUMA.

The rules relating to the **figure of the statutory employer governs these circumstances**, specifically, as it pertains to the **immunity** it provides for the employer and all other companies in the hiring hierarchy including the principal (LUMA), when the employer has the corresponding **State Insurance Fund** ("SIF") policy.

To that extent, Elite complied with all the requirements of the Puerto Rico Workmen's Accident Compensation Act (hereinafter also referred to as "PRWACA"), Act No. 45 of April 18, 1935, as amended, P.R. Ann. Stat. Tit. 11 §§ 1 *et. seq.*, to **insure McBride for workplace accidents**. As a matter of fact, the corresponding policy obtained by Elite specifically provides that the work being performed would be performed at LUMA facilities and pursuant to the contract with Motive. Therefore, on the dates on which the alleged accident occurred, **Elite, Motive and LUMA were protected against liability for the accident**. Specifically, Elite was protected by virtue of its policy with the SIF, while Motive and LUMA were protected by virtue of the statutory employer doctrine, as recognized by the Supreme Court of Puerto Rico.

As is well known, PRWACA provides the insured employer with **absolute immunity** from claims for damages by employees who suffer workplace accidents, as McBride did. This employer immunity is not a mere defense available to the employer against claims for damages filed by its injured employees. Rather, there is a **total absence of a cause of action against the employer for the accidents at work that the SIF compensates**. See *Kientz Abreu v. P.R. Ports Authority,* 2021 U.S. Dist. LEXIS 64778 * | 2021 WL 1235366, p. 11 (D.P.R. 2021) *(quoting Vega-Mena v. United States,* 990 F.2d 684, 686 (1st Cir. 1993)). Furthermore, this immunity also protects all principals in the contractual relationship chain when a contractor or subcontractor properly insures its employees with the SIF. Because LUMA was the principal in the contractual relationship between the companies, LUMA is also immune from liability and from the claims.

Although PRWACA has recognized certain limited exceptions to the applicability of employer immunity, McBride fails to comply with FED. R. CIV. P. 8 and does not include in the Complaint a succinct and simple account of the **facts** showing that LUMA acted intentionally, which would constitute the only potential exception to the immunity in these circumstances. As a matter of fact, the Complaint specifically claims that the accident was caused by the **negligent** operation of a LUMA vehicle by an employee. *See* **Docket No. 1, Complaint, ¶¶ 11 and 12.** These circumstances would **land the accident squarely within the definition of immunity**.

Consequently, LUMA respectfully requests that the Court dismiss the entirety of the Plaintiff's claim and dismiss **with prejudice** the above captioned Complaint filed against all co-defendants.[1]

---

[1] Co-defendant Universal also filed a Motion to Dismiss in which it explains that the workplace accident suffered by McBride is regulated by the PRWACA and the injured worker lacks a cause of action for damages if the employer is insured by the SIF. **Docket No. 19, Universal's Motion to Dismiss, pp. 10-14.**

II.     **STANDARD OF REVIEW**

Under FED. R. CIV. P. 12(b)(1), a case may be dismissed for lack of subject-matter jurisdiction. *Gonzalez-Camacho v. Banco Popular de Puerto Rico*, 318 F. Supp. 3d 461, 469 (D.P.R. 2018). Federal courts "are courts of limited jurisdiction, and therefore must be certain that they have explicit authority to decide a case." *Bonas v. Town of North Smithfield*, 265 F.3d 69, 73 (1st Cir. 2001). In a jurisdictional challenge, the burden of proving jurisdiction is with the plaintiff. *Murphy v. United States*, 45 F.3d 520, 522 (1st Cir. 1995); *Mercado Arocho v. United States*, 455 F. Supp.2d 15, 17 (D.P.R. 2006) ("Plaintiff shall meet the burden of establishing the factual predicates of jurisdiction by a preponderance of the evidence.") The standard of review under subsection 12(b)(1) for lack of subject matter jurisdiction is "similar to that accorded a dismissal for failure to state a claim" under subsection 12(b)(6). *Murphy*, 45 F.3d at 522.

Pursuant to FED. R. CIV. P. 12(b)(6), a defendant may request dismissal of a complaint for failure to state a claim upon which relief may be granted. When a complaint is challenged under this Rule, the court construes the pleading liberally in the pleader's favor. *See, e.g.*, *Kaltenbach v. Richards*, 464 F.3d 524, 526-27 (5th Cir. 2006). In other words, the Court presumes that all well-pleaded allegations are true, resolves all reasonable doubts in the pleader's favor, and views the pleading in the light most favorable to the non-moving party. *See*, *e.g.*, *Fitzgerald v. Barnstable Sch. Comm.*, 555 U.S. 246, 249 (2009).

The allegations contained in a complaint are viewed through the prism of FED. R. CIV. P. 8(a)(2), which requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). This rule exists to "give the defendant fair notice of what the claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (*quoting Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While

encouraging brevity, however, the federal pleading duty is far from trivial. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009) (FED. R. CIV. P. 8 still "does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions"); *see also Doyle v. Hasbro, Inc.* 103 F.3d 186, 190 (1st Cir. 1996) (the pleading requirement is real and "not entirely a toothless tiger"). Therefore, to comply with FED. R. CIV. P. 8, a complaint need not include "detailed factual allegations," but it must contain "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678 (*citing Twombly*, 550 U.S. at 555) (additional citation omitted). The factual allegations must "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555 (citations omitted). Complaints that offer "labels," "conclusions," "a formulaic recitation of the elements of a cause of action," or "naked assertions devoid of further factual enhancement" fail to rise above the speculative level. *Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 555. Consequently, to survive a motion to dismiss, a complaint must allege factual matters that state a "claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678 (*quoting Twombly*, 550 U.S. at 570).

### III. STATEMENT OF FACTS

A. The following factual allegations of the Complaint are taken as true only for purposes of this motion:

1. McBride is of legal age and a resident of the state of Arizona. **Docket No. 1, Complaint ¶ 1.**

2. The appearing defendants are business entities organized and existing under the laws of Puerto Rico. LUMA operates the facility located at Caguas, Puerto Rico, where McBride suffered the workplace accident which is the object of this Complaint. LUMA is the operator of the vehicles involved in the accident. **Docket No. 1, Complaint ¶¶ 2-3.**

3. On April 24, 2024, McBride was present at the aforementioned Caguas facility operated by LUMA. **Docket No. 1, Complaint ¶ 11.**

4. McBride was present at that location as an employee of Elite and was installing a camera system below the driver's dashboard of a 2004 Chevy Colorado chevy pickup operated by LUMA, which was parked in the aforementioned facility. **Docket No. 1, Complaint ¶ 11;** *see also*, **Exhibit 1, Entrance Log for the Caguas Facility for April 24, 2024, p. 24, line 15.**[2]

5. On or about 8:00 p.m. that day, while McBride was performing the aforementioned installation, a large 2018 International heavy truck with plate number H75898 that was being driven by Peter Mueller Lizana ("Mueller"), a LUMA employee, impacted the Chevy Colorado in which McBride was working on. **Docket No. 1, Complaint ¶ 11.**

6. Mueller did not have a valid heavy vehicle license at the time of the accident. *See* **Docket No. 1, Complaint, ¶ 13.**

7. McBride suffered several injuries because of the accident. **Docket No. 1, Complaint ¶ ¶ 12, 14.**

8. McBride further claims in the Complaint that he was taken to the Emergency Room at the Río Piedras Medical Center (known as "Centro Médico"). **Docket No. 1, Complaint ¶ 14.**[3]

B. The following facts arise from the attached documents, to which the Complaint refers directly or indirectly, and which provide context to the Complaint's factual allegations:

---

[2] Courts must consider the Complaint in its entirety, as well as other sources that courts normally consider when deciding motions to dismiss, in particular, documents incorporated into the allegations by reference, and matters that a court may take judicial cognizance of. *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007). This Honorable Court may consider the attached documents because the Complaint refers to specific facts that require the interpretation and evaluation of the relationship between the parties, which defines the applicable legal standards. The documents herein attached do not controvert the statements contained in the Complaint on which this motion is based, but rather provides the necessary context that the Court needs to evaluate the face value of the claims included.

[3] The Complaint makes reference to the "police investigation." **Docket No. 1, Complaint ¶ 13.** The Police Report on the accident reveals that McBride was actually taken to the Industrial Hospital for service. *See* **Exhibit 2, April 24, 2024 Police Report, p. 19.**

9. At the time of the accident, McBride was performing installations on the Chevy Colorado (installation and accident described in **Docket No. 1, Complaint ¶ 11**), pursuant to his employment with Elite. *See* **Exhibit 2, April 24, 2024 Police Report, p. 19;** see also, **Exhibit 3, Incident Report prepared by Elite Tech Install.**

10. LUMA had contracted with Motive to provide for the delivery, installation, and training for hardware and software Global Positioning System Telematics tracking for LUMA's fleet of Vehicles and Equipment (installation described in **Docket No. 1, Complaint ¶ 11**) at the beginning of February 2024. Specifically, Motive and LUMA entered into contract 2024-L 00327. *See* **Exhibit 4, Master Services Agreement, Exhibit A, Proposal ¶ 1.3.**

11. On March 7, 2024, Motive notified LUMA that, pursuant to contract 2024-L 00327, Motive had no plans or intentions of performing any physical work in Puerto Rico. Rather, Motive hired Elite to perform the physical work in Puerto Rico (work and location described in **Docket No. 1, Complaint ¶ 11**) and Elite had purchased a Workmen's Compensation Insurance policy with the SIF to insure its workers for the work performed pursuant to the contract ("Policy"). *See* **Exhibit 5, Letter of March 7, 2024.**

12. Elite in fact provided a copy of the corresponding Policy, which was executed the same day as the aforementioned communication, March 7, 2024. Said policy specifically includes LUMA as its insured facilities (premises described in **Docket No. 1, Complaint ¶ 11**). *See* **Exhibit 6, Elite Tech Install Policy, p. 2.**

13. The Policy further specifies that the work to be performed will be the installation of "Vehicle Gateway and Dashcam" (installation described in **Docket No. 1, Complaint ¶ 11**) pursuant to the contract between Elite and Motive. See **Exhibit 6, Elite Tech Install Policy, p. 1.**

IV.  **ARGUMENTS IN SUPPORT OF DISMISSAL**

   a. **LUMA is immune under the statutory employer doctrine.**

Pursuant to the Complaint in the above captioned matter, Plaintiff claims to have a valid tort action for damages under Article 1536 of the Puerto Rico Civil Code, P.R. Laws Ann. Tit. 31 § 10801. However, as discussed below, Plaintiff's claim of civil liability against LUMA regarding the damages that he allegedly suffered as a result of the workplace accident would be barred by PRWACA, insofar as LUMA is considered a statutory employer under the act and McBride's true employer provided workplace accident insurance for him.

One of the most serious economic and social problems confronted by the modern State is that of ensuring that workers receive fair, prompt and equitable compensation when they suffer damages or injuries as a result of a workplace accident. The Puerto Rico Legislature approved PRWACA to address this problem. PRWACA's main objective is to provide workers with a fast and effective remedy free from the complexities of an ordinary damage suit. *Cook-Bussman v. Asociación De Condómines De Isleta Marina, Inc.,* 2014 U.S. Dist. LEXIS 182414, 2014 WL 7892238, p. 4 (D.P.R. 2014). The PRWACA created the SIF to provide health services and compensation to injured employees, and the Industrial Commission, to resolve any disputes regarding coverage and services.

PRWACA creates a compulsory insurance scheme whereby employees who work for insured employers, and suffer an injury, illness, disability or death in accidents arising out of any act or duty inherent to their work or employment, are entitled to receive the benefits of the statute, regardless of whether the injury occurred due to the negligence of any person. P.R. Laws Ann. Tit. 11 § 19 (2012). The PRWACA covers all employers that employ one or more employees, including private companies, public corporations, and agencies of the Commonwealth government. P.R.

8

Laws Ann. Tit. 11 § 2 (2012). In return, insured employers enjoy immunity from actions filed regarding compensation for the worker's injuries. This *quid pro quo* is the central axis of the compulsory insurance scheme. *See Feliciano Rolón v. Ortho Biologics, LLC,* 404 F. Supp. 2d 409, 414 (D.P.R. 2005).

Thus, pursuant to the provisions of the PRWACA, when an employee suffers an injury, illness, disability or death in the circumstances described in the preceding paragraphs, and the employer is insured, the employee's right to compensation from the employer is limited to the statutory compensation offered through the SIF. P.R. Laws Ann. Tit. 11 § 21 (2012); *see also*, *Vega-Mena v. United States,* 990 F.2d 684, 686 (1st Cir. 1993). The PRWACA shields employers from tort liability for injuries that are covered by that Act. *Feliciano Rolón.*, 404 F. Supp. 2d at p. 414. The compensation provided by the statute is the only remedy against the employer available to the worker or his beneficiaries, provided the case comes within the scope of the Act. *Julia v. Water Resources Authority*, 91 DPR 574, 578, 1964 PR Sup. LEXIS 393 [Official Translation] (1964).

As such, it is well settled law in Puerto Rico that, regardless of an employer's "actions in the aquilian sphere and the degree of fault or negligence," the insured employer has absolute immunity against actions to recover damages filed by injured workers against their employer. *Cubano v. Iglesia*, 91 D.P.R. 596, 603, 1964 PR Sup. LEXIS 396 [Official Translation] (1964); *Julia v. Water Resources Authority*, 91 DPR 574, 579 (1964).

An employee could, however, file suit against any third party that caused the injury and recover damages against such if that third party is a stranger to the employee-employer relationship. *Santiago Hodge v. Parke Davis & Co.*, 909 F.2d 628, 637 (1st Cir. 1990). Nevertheless, determining who is a third party for purposes of the PRWACA is not as

9

straightforward as it may seem, given that certain companies and individuals that have a contractual relationship with the injured worker's employer are also immune from liability by virtue of the "statutory employer" doctrine. This concept was fashioned by the Puerto Rico courts to extend an employer's immunity to certain persons who were not technically employers but were thought to deserve immunity from tort liability because of their close involvement in the employer-employee relationship. Specifically, "[t]he decision regarding defendant's position as statutory employer depends on the contractual relations between said defendant and the workmen's real employer." *Santiago-Hodge v. Parke Davis & Co.*, 859 F.2d 1026, 1031 (1st Cir.1988) (*quoting Vda. de Costas v. P.R. Olefins,* 107 DPR 782, 785 (1978)).

When a contractual relationship for services exists between two or more corporations, the law requires the principal in said relationship to insure the workers of the company whose services has been contracted, if said company has not done so. *González Pérez v. Harley Marine Financing, LLC,* 2024 WL 3378269, p. 6 (D.P.R. 2024). In exchange, the principal will also be immune from liability. Therefore, an employer shall enjoy the statutory immunity provided by the PRWACA in two situations: (1) if it complies with its obligation to insure with the SIF the workers which their actual employer has not insured or (2) if the employer hired to perform certain services has insured its workers, who will perform such services for the statutory employer.

LUMA qualifies as a "statutory employer" under the doctrine, due to the contractual nexus between LUMA, Motive and Elite, and, thus, is immune to McBride's claim for the alleged damages suffered as a result of his workplace accident. The "statutory employer" is "the principal contractor and […] the real or contractual employer of an employee who seeks compensation for a work-related accident, when the principal contractor may be protected by the employer immunity." *Santiago Hodge*, 909 F.2d at pp. 637-638.

Both Puerto Rico courts and this Honorable Court have "recognized the 'statutory employer' within the context of a contract or subcontract for work or services, and only for project owners, principal contractors or subcontractors who had, with regard to the injured worker, the mutual legal obligation to insure him with the State Insurance Fund." *Id.* at p. 638. The determinant factor of immunity is "the existence of that direct or indirect link between the workman who suffers the accident and the employer in the course of whose employment and as a consequence of which the injury takes place." *González Pérez v. Harley Marine Financing, LLC,* 2024 WL 3378269, p. 6.

The relevant relationship between the actual and the statutory employer must be a vertical, contractual one in order to link the employee with the statutory employer. *Santiago-Hodge*, 859 F.2d at p. 1031. Particularly, the Supreme Court of Puerto Rico has explained that determining who is a statutory employer in the relationship requires defining the "contractual chain" applicable to the relationship. This District Court has explained the concept as follows:

> Notably, Puerto Rico case law "has only recognized the statutory employer [liability] within the context of a contract or subcontract for work or services, and only for project owners, principal contractors or subcontractors who had, with regard to the injured worker, the mutual legal obligation to insure him with the State Insurance Fund ... Unless there exists a legal nexus linking the worker's direct employer to the wrongdoer in the mutual legal obligation to insure the employee with the Fund, the alleged wrongdoer is a mere third party lacking statutory protection against claims by injured workers, and not an immune statutory employer." *Vega-Mena*, 990 F.2d at 687 (*citing Santiago Hodge P.R.*, *reprinted in* 909 F.2d at 638)(internal quotation marks omitted); *see also Lusson v. Carter*, 704 F.2d 646, 651 (1st Cir. 1983)("For the purposes of art. 31 [11 L.P.R.A. § 32] of the Act, a third party liable for damages is a person unconnected with, alien, and separated from the juridical interaction that relates the statutory employer ... and the contractor ... with the State Insurance Fund in the mutual legal obligation of insuring their workmen and employees, pursuant to the provisions of the Workmen's Accident Compensation Act."(emphasis added)).

*González Pérez v. Harley Marine Financing, LLC,* 2024 WL 3378269, p. 6.

A company or individual will be considered a statutory employer under the PRWACA if said company would have had an obligation to insure the workers of contractors or subcontractors if that contractor or subcontractor had not insured its own workers. The importance of distinguishing the concepts of a "third party" and "statutory employer" lies precisely in the different responsibilities of each regarding injuries from accidents at work: while the statutory employer is sheltered by the immunity that protects the insured direct employer or by its own immunity if it complies with the obligation to insure workers that are not insured by the direct employer, the third party tortfeasor will be liable to lawsuits for damages. *Id.* at p. 5.

In the present case, LUMA was not McBride's employer but rather his **statutory employer** under the PRWACA, since LUMA retained the services of Motive, as an independent contractor, who then retained the services of Elite as a subcontractor, for the installation of cameras and GPS. Elite retained McBride to install these systems on the corresponding LUMA vehicles. Thus, by that time, there was a vertical contractual relationship between the involved parties. Therefore, LUMA is also sheltered by the immunity that protects the insured direct employer.

In this case, LUMA, Motive and Elite had a vertical principal-contractor-subcontractor relationship for the performance of work pertaining to the installation of cameras and GPS monitoring systems on vehicles operated by LUMA. At the time of Plaintiff's accident, Elite had in place a Worker's Compensation Insurance Policy with the SIF, which covered, amongst other persons, the Plaintiff himself. The Policy shields Elite from liability, by virtue of the immunity provided by the PRWACA, and also shields Motive and LUMA by virtue of the statutory employer doctrine. Therefore, it is clear that, under Puerto Rico law, the required legal nexus existed between LUMA, Motive and Elite. Thus, LUMA is immune for any action pertaining to the workplace accident suffered by the Plaintiff because it is a statutory employer as defined by law.

### b. The Complaint contains no allegations that would nullify the claim of immunity.

Despite the existence of absolute immunity, limited instances have been recognized, by way of exception, in which an employer could be liable for a civil claim brought by an injured employee. *Feliciano Rolón,* 404 F. Supp. 2d at p. 414. Both PRWACA and interpretative caselaw by the Puerto Rico Supreme Court establish that employer immunity does not exonerate the employer (or statutory employer) when: (1) the damage suffered by the worker is due to an intentional and/or discriminatory act of the employer; (2) when the injured worker's employer is not insured, or (3) the defendant employer had acted by virtue of a dual capacity or personality. *Segarra Hernández v. Royal Bank*, 145 DPR 178, 195-196, 1998 PR Sup. LEXIS 193 [Official Translation] (1998).

When it comes to the intentional act exception, Courts have been consistent in stating that it only applies where "'the evidence denotes a specific intent to cause a harm which falls outside the scope of the 'inherent' working relationship' such as age-based discrimination or quasi-criminal and criminal acts that result in injury." *Marrero Ramos v. University of Puerto Rico*, 46 F. Supp. 3d 127, 131 (D.P.R. 2014) (quoting *Feliciano Rolón,* 404 F. Supp. 2d at pp. 414-416). The absolute employer immunity enjoyed by the employer cannot be defeated by any degree of negligence, even in the face of gross negligence. *Feliciano Rolón,* 404 F. Supp. 2d at p. 414.

The exception of intentional acts has been scarcely applied. *Reeser v. Crowley Towing & Transp. Co., Inc.,* 937 F. Supp. 144, 149 (D.P.R. 1996) (failure to repair a defective door despite the plaintiff's warnings does not rise to the level of intentional acts required to qualify within the intentional acts exception of the employer immunity doctrine). Discriminatory acts by the employer are the only intentional actions to overcome employer immunity that have been

recognized by Puerto Rico Supreme Court caselaw. *Segarra Hernández.,* 145 DPR at p. 200 (acts of discrimination in breach of public policy are not covered by Act No. 45).

In *Marrero Ramos v. University of Puerto Rico, 46 F. Supp. 3d 127,* the District Court concluded that an employer who failed to provide a safe work environment for its employees was still immune from liability. In explaining the supporting Puerto Rico Supreme Court caselaw, the Court Explained:

> The Puerto Rico Supreme Court held that "gross negligence due to failure to provide a safe workplace in accordance with basic federal and local standards did not constitute intentional conduct and hence, was not an exception 21 to the employer's immunity." *Id.* at 415. Therefore, Marrero–Ramos' argument that there was a "total absence of training, policies, rules, supervision" does not place him within the exception to employer immunity. (Docket No. 49 at 3.)

*Marrero Ramos*, 46 F. Supp 3d at pp. 131-132. *See also, Hernández v. Bermúdez & Longo, S.E.*, 149 DPR at p. 549-550 ("The mere failure of an insured employer to comply with the legal obligation imposed by the Occupational Safety and Health Act, to maintain safe conditions of employment, does not authorize any cause of action in favor of workers for a work accident, nor does it affect employer immunity. *Vda. de Costas v. P.R. Olefins*, 107 DPR 782 (1978). There is no allegation that Bermúdez & Longo intentionally caused the accident that claimed the life of Díaz-Cardona. For this reason, the only remedy available is that provided by the Fund."); *Vda. de Costas*, 107 DPR at p. 788, 1978 PR Sup. LEXIS 585 [Official Translation] ("Failure to comply with that legal obligation does not authorize any cause of action in favor of workers, even when they suffer injuries, and does not affect the immunity that the employer has under Art. 20 [now, Article 18] of the Workers' Compensation Law, P.R. Ann. Stat. Tit. 11 §21. If it were decided that an employer who contractually undertakes to maintain safe working conditions is obliged to compensate injured workers, the same remedy would exist when the obligation arises by mandate

of law. The effect of this would be to completely annul the employer's immunity granted by the aforementioned Art. 20 [now, Article 18] of the law.").

The allegations of the Complaint do not establish a plausible nor potential claim by the Plaintiff that LUMA, as a statutory employer, acted intentionally in causing the accident which then caused the injuries for which McBride now requests redress. The factual claims that discuss the incident clearly establish a claim that LUMA – through the employee who was driving the vehicle which impacted the vehicle McBride was working on – allegedly *acted negligently*. The language in the Complaint is crystal clear: "[a]s a result of the careless driving and unsafe driving behavior by Peter its [sic] resulted that the Chevy Pick Up was slammed from behind by the defendant's vehicle." *See* **Docket No. 1, Complaint, ¶ 12.** Plaintiff also alleges that the LUMA employee did not have a valid heavy vehicle license at the time of the accident. *See* **Docket No. 1, Complaint, ¶ 13.** The conclusion clearly follows that the allegations attempt to establish a negligent act by LUMA.

Even if the Court were to find that the actions by LUMA were grossly negligent, the employer immunity under the PRWACA would apply and shield from any such liability because the actions did not have the intention of causing any harm to Plaintiff. Furthermore, as detailed in the previous section, the direct contractual relationship between LUMA and the Plaintiff's employer extends this immunity to LUMA as McBride's statutory employer.

Consequently, LUMA is immune from liability in this action and the Court should not entertain the matter any further. As a threshold matter, the Court should enter Judgment dismissing all claims against LUMA.

V.      **RELIEF REQUESTED**

**WHEREFORE**, for the foregoing reasons, LUMA respectfully requests that this Court GRANT this Motion to Dismiss in its entirety and dismiss all claims against LUMA **with prejudice**. Also, it is requested that this Court award LUMA costs and attorney's fees.

**RESPECTFULLY SUBMITTED.**

**WE HEREBY CERTIFY**, that on this date, we electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all relevant parties.

In San Juan, Puerto Rico, this 30th day of January, 2025.



**DLA Piper (Puerto Rico) LLC**
500 Calle de la Tanca, Suite 401
San Juan, PR 00901-1969
Tel. 787-945-9122 / 787-945-9106 / 787-945-9134
Fax 787-236-0476 / 939-697-6141 / 939-731-4012

*/s/Margarita Mercado Echegaray*
Margarita Mercado Echegaray
USDC-PR No. 228901
margarita.mercado@us.dlapiper.com

*/s/ Mariana Muñiz Lara*
Mariana Muñiz Lara
USDC-PR No. 231,706
mariana.muniz@us.dlapiper.com

*/s/Daniel Brown Sáenz*
Daniel Brown Sáenz
USDC-PR No. 229601
daniel.brown-saenz@us.dlapiper.com