**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF PUERTO RICO**

| | |
|---|---|
| DANIEL M. McBRIDE<br><br>Plaintiff<br><br>v.<br><br>LUMA ENERGY, LLC; LUMA ENERGY SERVCO, LLC; CHUBB INSURANCE COMPANY; UNIVERSAL INSURANCE COMPANY; JOHN DOE; RICHARD ROE a to z; "A", "B" AND "C" INSURANCE; et. al<br><br>Defendants | CIVIL NO. 24-1554 (MAJ) |

**EMERGENCY MOTION TO COMPEL DISCOVERY AND/OR REQUESTING DISMISSAL OF ALL CLAIMS FOR FAILURE TO COMPLY COOPERATE WITH DISCOVERY AND COMPLY WITH COURT ORDERS**

**TO THE HONORABLE COURT:**

Come now the co-defendants LUMA Energy, LLC (individually, "ManageCo") and LUMA Energy Servco, LLC (individually "ServCo") (jointly referred to as "LUMA" or the "Defendants"), through the undersigned counsel, and respectfully state and pray:

**I.      INTRODUCTION**

Once again, the appearing Defendants in the above captioned Complaint are compelled to request the Court's intervention in a matter pertaining to discovery proceedings. As we recount below, the instant case has been riddled with discovery disputes, primarily due to Plaintiff's inability to provide responsive answers to written discovery, his inability to produce documents in response to legitimate and relevant document requests and, above all else, his failure to comply with unequivocal court orders issued to those effects. Not to mention, Plaintiff's obstinate interruptions of his own deposition and failure to provide responses to questions that are **clearly** within his area of knowledge.

1

1628380143.1

The Defendants have had to request the Court's intervention **several times** during discovery proceedings because of this obstructive conduct. Originally, the Defendants first requested the Court's intervention to compel the Plaintiff to provide responsive answers to the First Set of Interrogatories and Request for Production of Documents (the Production of Documents, particularly, had not been responded by the Plaintiff at that time). During the hearing to discuss that request, the Defendants specifically requested the Court's intervention because the Plaintiff had failed to provide relevant financial documentation to support his claimed earnings – since the claims made in the Complaint include a request for redress for loss of income. Thereafter, the Defendants again requested the Court's intervention after the first attempt to depose the Plaintiff, since the Plaintiff had been uncooperative during his deposition, which had forced the Defendants to interrupt the proceedings. Finally, during the rescheduled deposition proceedings, the Defendant had to request the Court to intervene and Order Plaintiff to produce specific documentation that was in Plaintiff's Counsel's possession, was relevant to the matter at hand, and had been retained from prior production.

These different instances have resulted in several Court Orders of varying degrees. The parties were initially instructed by the Court to meet and confer to discuss and resolve controversies relating to the disputes on the answers to interrogatories and production of documents. However, the Court's decisions would subsequently escalate. The Plaintiff was particularly ordered to produce the documents relating to his financial information and, during the deposition, he was particularly ordered to produce the documents that had been retained from production.

Unfortunately, the Court's order and the Defendants' requests to comply have not deterred Plaintiff from continuing with his evasive practices. This continued conduct has forced

1628380143.1

Defendants once again to move the Court for a resolution on the matter. In this specific instance, there are two matters in question, where the Court should, once again, instruct the Plaintiff to comply.

**First**, during Plaintiff's deposition, plaintiff Daniel M. McBride ("McBride" or "Plaintiff") repeatedly resorted to the obstructive position of claiming to not have knowledge about things that were clearly within his area of knowledge, matters directly related to his claims and other areas which the Plaintiff should have reasonably been prepared to answer questions about. All of these areas are relevant to discovery proceedings and the Plaintiff has an obligation to produce relevant information about his claims, particularly when they relate to matters where all information is within the Plaintiff's control (such as his earnings after the matters raised in the Complaint occurred). Due to Plaintiff's responses, where he failed to provide details, but revealed that such details would be contained in documentary evidence, Defendants followed up the deposition with document requests for those specific documents mentioned by the Plaintiff. Despite the materiality of these requests, Plaintiff simply opted to object to the entirety of the requests and not provide any documentation in response. Defendants reminded Plaintiff of the context of these requests, but Plaintiff still opted to decline production of the relevant documentation.

**Second**, as of this date **Plaintiff has not provided Defendant with the documentation related to his financial situation, despite the Court ordering Plaintiff to produce such documentation.** Despite being clearly ordered by the Court to provide such evidence – which is relevant to one of the most significant remedies that the Plaintiff has requested – he has failed to provide the documentary evidence that would show that he truly has a right to any such remedy, thereby violating the clear Court Order.

3

These issues have moved to the forefront of importance at this point. Not only is it paramount that the Court is aware of Plaintiff's conduct; it is important to note the timing of these non-compliances. As the Court is aware, the deadline for discovery is set for January 30, 2026. Given the impending deadline, the Defendant is forced to quickly move the Court to avoid the expiry of such deadline in light of the renewed difficulties that have been faced during discovery proceedings.

As will be shown below, Plaintiff's obstruction of discovery has come to head and requires serious sanctions, including the dismissal of the claims and/or specific orders to the Plaintiff to produce the requested documentation. Thus, LUMA moves the Court to enter an order to compel discovery from McBride and/or to dismiss the Complaint for Plaintiff's failure to comply with discovery.

## II.    RELEVANT PROCEDURAL BACKGROUND

1.    An **Initial Scheduling Conference** was held on March 25, 2025, before Judge María Antongiorgi-Jordán in the above referenced matter. During the hearing, the Court adopted the discovery deadlines proposed in the parties' Joint Initial Scheduling Memorandum (Dkt. No. 40) with additional settings. As it pertains to the instant motion, the Court set the deadline for discovery for December 15, 2025. **See Docket No. 44.**

### a.  The Initial Motion to Compel

2.    On September 30, 2025, LUMA moved the Court to compel the Plaintiff for the first time. The motion rose from a prolonged dispute over discovery obligations. LUMA served McBride with its First Set of Interrogatories and Request for Production of Documents on April 4, 2025, seeking critical information regarding witnesses with knowledge of relevant facts, expert witnesses, medical professionals and institutions that treated McBride, a computation of alleged damages, medical expenses, prior injuries, employment history, and other supporting

4

documentation for his claims. Despite multiple good-faith attempts to resolve the matter – including written objection letters sent on June 16, 2025 and August 26, 2025, as well as follow-up communications and an in-person meeting with counsel on August 27, 2025 – McBride's responses had consistently been incomplete, evasive, and replete with impermissible boilerplate and generalized objections, including blanket claims of overbreadth, vagueness, and improper references to initial disclosures without providing specific, individualized answers or properly identified document productions. McBride additionally failed to respond to the Requests for Production of Documents entirely, produced documents piecemeal and in a disorganized fashion without bates-stamping or proper identification, and disregarded deadlines set by LUMA's counsel to provide amended answers. Based on these deficiencies, LUMA respectfully requested that the Court issue an order compelling McBride to fully respond to the First Set of Interrogatories and Request for Production of Documents, along with any other relief the Court deemed appropriate. **See Docket No. 76.**

3.      The Court held a hearing on LUMA's Motion to Compel on November 17, 2025, after the motion went unopposed by the Plaintiff. Although the Plaintiff did not file an opposition, the parties informed the Court that they had held several meetings to discuss the matter, and, as a result, the Plaintiff had filed amended answers to the interrogatories and supplemented his document production. LUMA, however, indicated that the Plaintiff's response remained deficient because he had not identified which documents were responsive to each request and, particularly, had failed to produce evidence of his income tax returns to support his claim for lost profits ("Tax Documents"). **See Docket No. 89.**

4.      The Court issued several orders to the parties. First, it ordered the parties to meet and confer by November 21, 2025, during which Plaintiff's counsel had to identify each document

responsive to each individual request for production. **Regarding the Tax Documents specifically, the Court ordered the Plaintiff to produce his tax returns by November 21, 2025, in response to request for documents No. 8; alternatively, if the Plaintiff had not filed income tax returns for the relevant period, he had to provide a written response so stating**. The parties were also instructed to discuss any outstanding issues concerning the Plaintiff's amended answers to the interrogatories. The Court thus granted LUMA's motion to compel in part and held it in abeyance in part pending the outcome of the meet-and-confer. Finally, the parties were ordered to file a joint informative motion on any remaining discovery disputes by November 24, 2025. **See Docket No. 89.**

5.      The parties subsequently met to discuss the controversies and ironed out a plan for the Plaintiff to comply with the discovery requests and orders and produce the documents. In regard to the Tax Documents, the Plaintiff failed to provide any documentation by the date of the meeting and subsequently failed to supplement his answers with any of the requested documentation.

6.      The parties filed a Joint Motion in Compliance on December 5, 2025, in which they explained that the parties did meet on November 21, 2025 as required. The Plaintiff reported that the parties engaged in good faith efforts to resolve the disputes amicably. The Plaintiff also indicated that he did not currently possess all the specific information requested. **See Docket No. 100.**

7.      Regarding Tax Documents specifically, the motion disclosed that the Plaintiff had formally requested documents from the Internal Revenue Service (IRS) relating to his sources of income, as requested by the Defendants. **Importantly, the Plaintiff claimed that he did not have any additional documents relating to his sources of income for the five years prior to the**

1628380143.1

**incident in his control or possession beyond what had already been produced**. LUMA confirmed that the controversy regarding documents showing the Plaintiff's sources of income for the five years prior to the accident remained unresolved, and the parties were currently awaiting the production of documents from the IRS. **See Docket No. 100.**

8.    The Defendants further noted that the discovery deadline was then set for December 15, 2025, and, given the delays in obtaining the IRS documentation, it was highly unlikely that discovery could be completed by that date, making an extension of time necessary. Plaintiff, however, contended that no delays had been created on his side and argued that Defendants could have obtained the requested documents through subpoenas or other means, suggesting an extension was not warranted. The parties ultimately requested that the Court take note of their compliance efforts. **See Docket No. 100.**

9.    However, several outstanding issues remained, including the matter of the Plaintiff's Tax Documents to demonstrate his prior earnings.

**b.  The Plaintiff's first attempted deposition.**

10.   On November 20, 2025, LUMA filed a Motion Requesting Order and Sanctions, seeking court intervention to address misconduct during the Plaintiff's deposition that prevented the Defendants from conducting a fair examination. **See Docket No. 90.**

11.   The deposition of Plaintiff was scheduled for 10:00 a.m. on November 20, 2025, and was conducted via videoconference at Plaintiff's request, as he resides outside the jurisdiction. When the Plaintiff joined the videoconference, Defendant's counsel immediately noted concerns because the Plaintiff appeared to be participating from inside a motor vehicle using a mobile phone. Despite counsel's concerns about the Plaintiff's ability to review documentation during a deposition that could take several hours, the Plaintiff's counsel assured that the Plaintiff could

1628380143.1

proceed, and the Plaintiff himself confirmed he could review documents from his mobile phone screen. **See Docket No. 90.**

12.     Plaintiff's interference with the proceedings began immediately upon the commencement of questioning. When LUMA's counsel began with basic introductory questions concerning the Plaintiff's prior experience providing deposition testimony, Plaintiff repeatedly stated that he "did not understand" what a deposition was, "did not understand" the question being asked, and "did not understand" the context of questions being posed to him. Even after defense counsel provided clear, simple definitions of what a deposition was, Plaintiff continued to avoid answering these foundational questions and then shifted his approach, claiming he did not have the "necessary documentation" in front of him to provide answers. **See Docket No. 90.**

13.     Plaintiff's evasive conduct continued when questioning turned to his prior criminal court cases. While Plaintiff acknowledged that he had been a criminal defendant in Colorado Springs, Colorado, and other jurisdictions, he repeatedly refused to answer questions about the details of such cases, claiming he did not have the necessary documentation to provide answers. Throughout these interactions, defense counsel repeatedly advised Plaintiff that he was being uncooperative, unnecessarily delaying the deposition, and that a court order would be sought if such conduct continued. Despite these warnings, Plaintiff persisted in providing evasive answers regarding his prior experience testifying under oath. **See Docket No. 90.**

14.     Plaintiff's counsel further exacerbated the situation by instructing the Plaintiff to stop answering questions related to his prior criminal court cases without a valid basis under the Federal Rules, and attempted to contact the District Court to intervene. When the parties were unable to reach the Court, LUMA's counsel agreed to shift to a different line of questioning. **See Docket No. 90.**

1628380143.1

15.     The obstructive behavior continued when questioning resumed on the topic of the Plaintiff's residential address. Although Plaintiff initially provided his current address in Texas and stated he previously lived in Tucson, Arizona, before moving approximately four or five months prior, he immediately reverted to evasive behavior when asked follow-up questions. When asked about his prior address from just five months earlier, how long he had lived in Tucson, or where he resided before Tucson, Plaintiff repeatedly claimed he did not know the answers and did not have the necessary documents to respond. These are matters of basic personal knowledge that any competent witness should be able to answer without documentation. **See Docket No. 90.**

16.     After approximately ninety minutes - during which Defendant's counsel was unable to complete even basic introductory questioning- it became apparent that the session was futile and could not continue. Counsel then questioned Plaintiff about his capacity to answer and understand questions, including inquiries about his consumption of medication, narcotics, or alcoholic beverages in the preceding twenty-four hours. Although Plaintiff denied consuming any such substances, LUMA's counsel formed the opinion that Plaintiff appeared either impaired or, at a minimum, uncooperative and unwilling to answer deposition questions. Defendant's counsel attempted to contact the Court but was unsuccessful, and was forced to terminate the deposition session. **See Docket No. 90.**

17.     Based on these facts, the Defendants sought an order under Rules 30(c)(2), 30(d)(2), and 37 of the Federal Rules of Civil Procedure compelling Plaintiff to appear for a continued deposition, directing that the continued deposition occur in person at the courthouse under judicial supervision, and awarding the Defendants their reasonable costs and attorneys' fees incurred for the aborted session and for bringing the motion. The motion argued that these remedies

9

were necessary to restore a fair examination, deter further obstruction, and prevent prejudice to LUMA in preparing its defense. **See Docket No. 90.**

18.    On December 12, 2025, the Court held a hearing to discuss the controversies raised in the Motion Requesting Order and Sanctions filed by the Defendants, and other related motions. **See Docket No. 103.**

19.    The hearing addressed the circumstances that led to the interruption of Plaintiff's deposition on November 20, 2025. **See Docket No. 103.** The Court issued several orders regarding the resolution of these disputes. LUMA was ordered to provide Plaintiff with either the audio recording or a transcript of the deposition by December 17, 2025. Plaintiff was then required to review the audio recording or transcript by December 18, 2025. The parties were directed to file a joint informative motion by December 19, 2025, notifying the Court whether outstanding issues remained or whether an agreement had been reached. If an agreement was reached, the parties had to inform the Court of the date and location for Plaintiff's continued deposition; if the parties were unable to resolve the matter, they were required to submit the audio recording or transcript of the deposition to the Court by December 19, 2025. The Court indicated it would award costs and attorney's fees in favor of the prevailing party.  **See Docket No. 104.**

20.    On December 15, 2025, the parties filed a joint informative motion advising the Court of a resolution to these disputes. The parties explained that, following the December 12, 2025 hearing in which the Court ordered the parties to confer on a potential agreement, the parties reached a stipulation that Plaintiff's deposition would resume on January 13, 2025 via videoconference arranged by Defendant, with Plaintiff attending from a computer with screen-sharing capability and agreeing to cooperate and answer questions within his personal knowledge. **See Docket No. 107.**

1628380143.1

c. **The requested extension to complete discovery**

21.    On December 15, 2025, LUMA filed a motion requesting that the Court extend the discovery deadline from December 15, 2025 to January 31, 2026, and correspondingly extend the deadline for depositions and dispositive motions. The motion was necessitated by Plaintiff's repeated failures to provide complete, organized, and responsive discovery; his failure to timely produce core financial information including Tax Documents relevant to his claimed economic losses, and interruptions in the taking of Plaintiff's deposition. **See Docket No. 108.**

22.    LUMA explained in the motion that the record reflects that discovery in this case has been substantially protracted by Plaintiff's conduct. Beginning in early March 2025, the Defendants served their initial disclosures and identified deficiencies in Plaintiff's initial disclosures, requesting production of missing materials within five days. When LUMA served its First Set of Interrogatories and Requests for Production on April 4, 2025, Plaintiff served answers on May 14, 2025 that were incomplete, evasive, and non-responsive, and failed to answer any of the individual Requests for Production. LUMA served a detailed good-faith letter on June 16, 2025 identifying material deficiencies, including Plaintiff's failure to identify and describe medical providers and expenses, failure to identify communications, failure to provide information regarding experts, and failure to respond to any document requests. Despite this letter and multiple follow-ups in July 2025, Plaintiff's amended answers served on July 30, 2025 remained deficient in substance and format, continuing to rely on blanket objections and generic references to prior disclosures. **See Docket No. 108.**

23.    The motion documented a pattern of Plaintiff unreasonably withholding documentary evidence that had been specifically requested multiple times. At 4:22 p.m. on October 30, 2025, mere hours before Plaintiff's deposition was scheduled, Plaintiff supplemented

his production by serving 199 pages of documents related to Plaintiff's financial information, none of which were the previously requested Tax Documents. It later became clear during the deposition of Plaintiff's expert on lost wages, Jorge Rodríguez, that **these financial documents had been provided to the expert in late August 2025, demonstrating that Plaintiff had unreasonably retained documentary evidence from the Defendants despite multiple specific requests**. This eleventh-hour production was characterized as being done in bad faith and prevented LUMA from properly reviewing the documents in preparation for the deposition, forcing its postponement. **See Docket No. 108.**

24.    When Plaintiff's deposition finally commenced on November 20, 2025, it was interrupted after approximately ninety minutes due to Plaintiff's evasion and non-cooperation, requiring LUMA to move for court relief to continue the deposition under appropriate conditions. At the November 17, 2025 hearing on LUMA's Motion to Compel, the Court specifically ordered Plaintiff to produce his Tax Documents by November 21, 2025, or provide a written statement if no returns were filed for the relevant period. When the parties met on November 21, 2025, the Tax Documents production was not made; instead, Plaintiff represented that the Tax Documents had not been filed and subsequently stated that he had formally requested documents from the IRS. As of the filing of the motion, Plaintiff had not produced his Tax Documents, and the formal request for documents to the IRS remained outstanding with no responsive documents provided.

25.    Despite ongoing conferral and partial supplementation, the motion identified several critical items that remained outstanding at the time of filing: Plaintiff's financial records and tax returns central to his claimed lost profits and other economic damages; completion of Plaintiff's interrupted deposition; and clarity regarding whether Plaintiff had provided the entirety of documentary evidence in his control. LUMA had acted diligently throughout the discovery

process by serving timely written discovery, sending detailed deficiency letters, following up when deadlines lapsed, filing a motion to compel, appearing at hearings, and meeting and conferring as ordered, while the remaining obstacles were not attributable to LUMA and could not reasonably be resolved by the current deadline. Despite agreeing to continue the deposition on a date after the discovery cutoff, Plaintiff indicated he opposed an extension of the discovery deadline. **See Docket No. 108.**

26.    The Court Granted the Motion for Extension of time and set the new deadline for discovery for **January 30, 2026. See Docket No. 114.**

**d.  Issues arising during Plaintiff's second deposition.**

27.    Plaintiff's deposition finally took place on January 13, 2026. However, this session was not without controversy and did not go smoothly. During the course of the deposition, a discovery dispute arose which required the Court's immediate intervention.

28.    Particularly, during questions posed by Defendants' counsel, Plaintiff admitted **that he had submitted a worker's compensation claim relating to the accident claimed in the complaint.** This issue is central to the instant matter, since, **as Plaintiff very well knows,** LUMA's primary Affirmative Defense center on the fact that the incident claimed in the Complaint is a work related accident, and that LUMA is thus immune from suit. Plaintiff further revealed in the deposition that Plaintiff's counsel was in possession of the documents relating to this claim **but Plaintiff's counsel had purposely retained such documents and not provided them to the Defendants.** LUMA's counsel requested immediate production of the documents, and Plaintiff's counsel denied such request, which forced LUMA to request the immediate intervention of the Court, via a telephone conference.

1628380143.1

29.    During the telephone conference with the Court, Defendants' counsel explained that it intended to use these documents to question the Plaintiff during the deposition. Plaintiff's counsel objected, arguing the documents were irrelevant because the claim had been denied and that production should be sought through a formal written request rather than during the deposition.  The Court overruled these objections and ordered Plaintiff's counsel to produce the documents immediately so that defense counsel could review and use them as part of the ongoing deposition. **Docket No. 115.**

30.    Furthermore, from the outset of the Deposition, Plaintiff continued with his pattern of claiming to not have knowledge about information that clearly was within his area of knowledge and was unwilling to provide specifics into several matters. Throughout these repeated instances, Plaintiff identified and claimed that documentation in his control – documentation which had been previously requested and not provided – was required to supplement his inability to provide details. One such instance of this conduct was related to Plaintiff's earnings both before and after the incident claimed in the Complaint (an issue that is squarely relevant to his claims for lost earnings). To that extent, **and despite the fact that Plaintiff's counsel represented to the Court in the December 5, 2025 Joint Motion that the Plaintiff did not possess any documentation that would show his past earnings (see Docket No. 100), Plaintiff stated in his deposition that he maintained electronic records of Invoices he prepared and sent for the work he would perform.**

31.    Due to this, and many other assertions made during the deposition, it became clear to the Defendants that several follow up document requests were needed after Plaintiff's deposition concluded. That is, **despite the fact that LUMA had already requested such documentation,** it

14

was clear that LUMA had to again restate these requests in writing to ensure delivery of these relevant documents.

### e. Ongoing controversies

32.   Following the Plaintiff's deposition, on January 16, 2026, Defendant's counsel emailed Plaintiff's counsel with several document requests, all of which stemmed from Plaintiff's testimony during his deposition. **Exhibit A, Email of January 16, 2026.**

33.   The requests cover a broad range of records, including tax records to identify who prepared the Plaintiff's tax returns; invoices, paystubs, contracts, and communications showing the Plaintiff's work history from 2022 onward; and telephone records to determine when the Plaintiff was initially contacted about the work opportunity in Puerto Rico involving the installation of devices in LUMA-operated vehicles. The email also sought any written contract between the Plaintiff and SB Mobile for this Puerto Rico work, documentation regarding the hostel where the Plaintiff stayed on his first night in Puerto Rico, and records related to his flight departing Puerto Rico after the alleged accident. **Exhibit A, Email of January 16, 2026.**

34.   Additional requests included documentation concerning the potential appeal of the denied Worker's Compensation claim (no. 20241230040), bank records showing when the Plaintiff returned from Colorado Springs to Arizona after caring for his mother (reducing his ability to produce income), records establishing when he lost his health insurance, and documentation reflecting when the Plaintiff and Latonya Lake moved from Arizona to Texas. The email further requested records showing when the Plaintiff returned to work in late 2024, all invoices for work performed from November 2024 to the present (including work for S. Harris, Inc.), 1099 forms issued by S. Harris Inc. for 2022 through 2025, and all written communications, contracts, policies, and scheduling information relating to the contracting of his services for Puerto Rico. The email

concluded by requesting production of these documents within ten (10) days to determine whether a further deposition session is needed. The timeframe for the request was necessary, given the impending discovery deadline. **Exhibit A, Email of January 16, 2026.**

35.    Additionally, on that same date, Defendants' counsel emailed Plaintiff's counsel separately to address outstanding discovery requests for the Tax Documents. **See Exhibit B, Email of January 16, 2026.**

36.    In the email, opposing counsel was reminded that, during December 2025, representations were made that Plaintiff had submitted a request to the IRS to obtain copies of his tax returns and tax forms for the past five years. This request was made in response to a discovery demand that the plaintiff produce his tax returns for that period. As of the date of the email, no information regarding the status of the IRS request had been received, nor had any of the requested documentation been provided. LUMA requested that counsel either provide the documentation or provide an update on its status within five (5) days. **See Exhibit B, Email of January 16, 2026.**

37.    Plaintiff's counsel responded to the document requests via a letter sent on January 27, 2025. In his response, Plaintiff raises objections to virtually every discovery request served by the Defendants. The objections are uniformly asserted on the grounds that the requests are "vague," "impermissibly overbroad," and "unduly burdensome," with additional boilerplate language stating that the requests are made "only for the purpose of harassment" and seek information "not necessary for the case." **Exhibit C, January 27, 2026 Response.**

38.    Notably, the objections lack any meaningful specificity or explanation as to why each particular request is considered vague, overbroad, or burdensome. The same conclusory language is repeated nearly verbatim for each request, offering no particularized basis that would allow the Defendants to understand precisely what aspect of a given request is objectionable or

16

how the request could be narrowed or clarified to satisfy the Plaintiff's concerns. In most instances, the Plaintiff either refused to produce any documents at all or stated that the requested information is "not available at this time" without further elaboration. The letter concluded with a reservation of all rights and objections, further underscoring that Plaintiff declines to provide substantive responses to the discovery requests. **Exhibit C, January 27, 2026 Response.**

39.    Defendants' counsel immediately responded via email to this perfunctory response to the document discovery request. In the email, LUMA's counsel characterized Plaintiff's position as "unreasonable and unnecessary" at the current stage of proceedings. The email argued that the discovery requests at issue stemmed from Plaintiff's failure to respond to questions during Plaintiff's deposition, and that those questions are within the proper scope of discovery and relevant to Plaintiff's claims. Accordingly, Defendants contend that Plaintiff's objections to the requested documentation are meritless. **See Exhibit D, Reply of January 27, 2026.**

40.    LUMA set a deadline, demanding that the plaintiff provide the requested documentation in its entirety by the end of business on January 28, 2026. **See Exhibit D, Reply of January 27, 2026.** Such a deadline was necessary given the impending discovery deadline and Plaintiff's blanket objection to the discovery, demonstrating that any further attempts to resolve the matter without the Court's intervention would be futile.

41.    Despite the clear deadline, and the clear requests made by Defendant's counsel, <u>**no formal and complete response was provided by Plaintiff on January 28.**</u>[1] In other words, the documentrequests made during the deposition <u>**all of which stemmed from the Plaintiff's failure**</u>

---

[1]    Iti s worth noting that between January 28, 2026 and January 30, 2026, Plaintiff's counsel has sent some unmarked documentation to the Defendants. These documents seem to be relevant to the claims made in the Complaint, and some of them may be responsive to some requests. However, Defendants cannot make such an assertion, since no answer to the Request for Documents has been properly provided, and, thus, the Defendants are unable to classify most of the documents that have been sent in such a disorganized fashion.

**to provide details to relevant questions during his deposition**, and, notably, the request for Tax Documents – which had been requested as far back as August of 2025 – have not received a response by Plaintiff.

42.     In these circumstances, and given the impending discovery deadline, the Defendant is forced to once again request the Court's intervention to Compel the Plaintiff to discover evidence and/or to dismiss the claims made in the Complaint. In any case, if Plaintiff is ordered to produce the documentation, an extension of the discovery deadline is necessary.

### III. <u>LEGAL ARGUMENT</u>

It is well settled that the effective administration of justice requires that trial courts possess the capability to manage their own affairs. *Chambers v. NASCO, Inc.*, 501 U.S. 32, 43, 115 L. Ed. 2d 27, 111 S. Ct. 2123 (1991). Obviously, "courts cannot function if litigants may, with impunity, disobey lawful orders." *HMG Prop. Investors, Inc. v. Parque Industrial Rio Canas*, 847 F.2d 908, 916 (1st Cir. 1988). As such, the Court has considerable leeway and discretion in exercising its admitted authority to punish laggardly or noncompliant litigants. *Aoude v. Mobil Oil Corp.*, 892 F.2d 1115, 1117 (1st Cir. 1989).

The discovery mechanisms allowed by the Federal Rules of Civil Procedure serve to narrow and clarify the basic issues between the parties, and also as a device for ascertaining the facts, or information as to the existence or whereabouts of facts, relative to those issues. *Hickman v. Taylor*, 329 U.S. 495, 500–01, 67 S. Ct. 385, 388–89 (1947). As such, the parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or

18

expense of the proposed discovery outweighs its likely benefit. Fed. R. Civ. P. 26(b)(1). Information within this scope of discovery need not be admissible in evidence to be discoverable. *Id.*

Interrogatories and requests for production of documents are recognized as mechanisms for discovery under the Rules of Civil Procedure. Fed. R. Civ. P. 33 governs interrogatories and requires that a party served with such mechanism to provide answers and objections within thirty (30) days of being served upon them. The rule also requires that each interrogatory be answered separately and fully in writing and that any objection state the grounds for such objection with specificity. Fed R. Civ. P. 33 (b). Furthermore, requests for production of documents are governed by Fed. R. Civ. P. 34. This rule requires the response to be made in thirty (30) days, in writing and to identify with specificity each item or category of items which answer the requests. Fed. R. Civ. P. 34 (b).

A party's answers to discovery must be responsive, full, complete and unevasive. *Nat'l Bank & Trust Co. v. Caton*, 136 F.R.D. 682, 684 (D.Kan.1991). See also Fed.R.Civ.P. 37(a)(2) and (a)(3)(B) (propounding party may move to compel under Rule 37 where party responds to an interrogatory in evasive or incomplete manner). An evasive or incomplete answer or response is to be treated as a failure to answer or respond. *Life Music, Inc. v. Broadcast Music, Inc.*, 41 F.R.D. 16, 150 U.S.P.Q. 789 (S.D.N.Y. 1966).

Fed. R. Civ. P. 37(a)(1) authorizes a party to "move for an order compelling disclosure or discovery." Such a motion may be filed when "a party fails to answer an interrogatory submitted under Rule 33" or "fails to produce documents... as requested under Rule 34." Fed. R. Civ. P. 37(a)(3)(B)(iii)-(iv). Local Rule 26(b) requires that the moving party certify "that a good faith

19

effort was made with opposing counsel to reach an agreement on the matters set forth in the motion".

Mere statements that interrogatories or requests for production of documents are irrelevant are deemed inadequate to voice a successful objection to show that such discovery should not be permitted. *Aponte-Navedo v. Nalco Chemical Co.*, 208 F.R.D. 31,36 (D.P.R. 2010). "Federal Rule of Civil Procedure 26 ("Rule 26") states that *'[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case' and that information 'need not be admissible in evidence to be discoverable.'"* *Autoridad de Carreteras y Transportación v. Transcore Atlantic, Inc.*, 319 F.R.D. 422, 427 (D.P.R.2016). In other words, the term "relevant information" within Rule 26 includes any matter that is or may become an issue in the litigation. *See Vazquez Fernandez v. Cambridge College, Inc.*, 269 F.R.D. 150, 164 (D.P.R. 2010); *see also U.S. v. Matias*, 707 F.3d 1, 5 (1st Cir. 2013) (holding that relevant evidence includes any matter which has any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence); *In re Bard IVC Filters Prod. Liab. Litig.*, 317 F.R.D. 562, 564 (D. Ariz. 2016) (stating in regards to Rule 26 that after the 2015 amendments "The test going forward is whether evidence is 'relevant to any party's claim or defense...'"); *America Health Inc. v. Chevere*, 37 F.Supp.3d 561, 564 (D.P.R. 2014) ("Relevant evidence is that which may prove or disprove a party's liability theory.").

Furthermore, it is the party that withholds information who "bears the burden of establishing lack of relevancy or undue burden." *Autoridad de Carreteras y Transportación*, 319 F.R.D. at 427 (citations omitted). That is to say, the objecting party "must show specifically how each interrogatory or request for production is not relevant or how each question is overly broad,

burdensome or oppressive." *Id.* at 430 (citations omitted) (emphasis supplied); *see also* Fed. R. Civ. P. 33(b)(4) (providing that "grounds for objecting to an interrogatory must be stated with specificity."). Accordingly, generalized objections to an opponent's discovery requests are insufficient. *See, e.g., Mancia v. Mayflower Textile Servs. Co.,* 253 F.R.D. 354, 358 (D. Md. 2008) ("Boilerplate objections that a request for discovery is overbroad and unduly burdensome...are improper ***unless based on particularized facts.")*** (citations and quotation marks omitted) (emphasis supplied); *Walker v. Lakewood Condo. Owners Ass'n*, 186 F.R.D. 584, 587 (C.D. Cal. 1999) ("Boilerplate, generalized objections are inadequate and tantamount to not making any objection at all."). From this follows that if "a party fails to answer an interrogatory submitted under Rule 33" or "fails to produce documents...as requested under Rule 34", the opposing party may move for an order compelling discovery. Fed. R. Civ. P. 37(a)(3)(B)(iii)-(iv).

Finally, under Federal Rule of Civil Procedure 37, a district court possesses the authority to dismiss an action for noncompliance with discovery orders. *Benitez-Garcia v. Gonzalez-Vega*, 468 F.3d 1, 4 (1st Cir.2006). The Rule allows a District Court to issue whichever sanctions it finds just due to the parties noncompliance, with the decision to sanction and the choice of sanction lying within the discretion of the district judge. *In re Selected Somersworth Bank Cases*, 148 F.R.D. 1, 4 (D. Maine 1993). However, a case should only be dismissed with prejudice when a party's misconduct is "particularly egregious or extreme." *Id.* Dismissal under Rule 37(b)(2)(C) for failure to comply with a discovery order is therefore a "sanction of last resort, applicable only in extreme circumstances, to the most flagrant of discovery abuses," and should be employed only if the court cannot fashion an equally effective but less drastic remedy. *Id.* In determining whether dismissal is appropriate, courts consider several factors, including the severity of the violation, the legitimacy of the party's excuse, the repetition of violations, the deliberateness of the misconduct, mitigating

excuses, prejudice to the opposing party and to the operations of the court, and the adequacy of lesser sanctions. *Alfreedi v. Bennett,* 517 F. Supp. 2d 521, 527 (D. Mass. 2007). Notably, disobedience of court orders, in and of itself, has been held to constitute extreme misconduct warranting dismissal as a discovery sanction. *Id.*

## IV. <u>DISCUSSION</u>

As set forth above, the Plaintiff has engaged in a persistent pattern of discovery violations, failure to comply with a court order, and obstructive conduct that has severely hindered the Defendants' ability to prepare their defense in this matter. Given the gravity of this misconduct, the Court should exercise its authority under Federal Rule of Civil Procedure 37 to impose appropriate sanctions—including dismissal of Plaintiff's claims or, in the alternative, an order compelling production and an extension of the discovery deadline.

### A. **Plaintiff has engaged in repeated discovery violations and has failed to comply with court orders.**

Plaintiff's discovery conduct in this litigation can only be described as a continuing pattern of willful noncompliance and obstruction. The record establishes that Plaintiff has repeatedly failed to provide complete and responsive discovery; has offered boilerplate objections devoid of any particularized basis; has failed to produce court-ordered documents, and has misrepresented his possession of documents to the Court, only to later contradict those representations under oath.

First, Plaintiff has persistently failed to produce financial and tax documentation central to his claim for lost earnings. Despite LUMA's initial discovery requests served on April 4, 2025, and **despite the Court's specific order on November 17, 2025 requiring the Plaintiff to produce his tax returns by November 21, 2025 or provide a written statement if no returns had been filed**, Plaintiff has failed to produce any Tax Documents. Instead, Plaintiff represented in the December 5, 2025 Joint Motion that he did not possess documents relating to his sources of income beyond

22

what had already been produced – a representation that was contradicted by Plaintiff's own deposition testimony on January 13, 2026, when he admitted that he maintains electronic records of invoices for his work. This discrepancy is not merely a failure to comply with discovery; it constitutes a misrepresentation to the Court that has prejudiced the Defendants' ability to evaluate and defend against Plaintiff's claims.

Second, **Plaintiff deliberately withheld documents relating to his worker's compensation claim that are directly relevant to LUMA's primary affirmative defense**, that the incident alleged in the Complaint is a work-related accident subjecting LUMA to immunity. Plaintiff admitted, during his January 13, 2026 deposition, that Plaintiff's counsel possessed these documents but had purposefully retained them from production. The relevance of these documents is beyond dispute, as they bear directly on LUMA's immunity defense. The Court was compelled to intervene during the deposition to order immediate production, further demonstrating Plaintiff's willful conduct in obstructing discovery.

Third, Plaintiff has consistently responded to legitimate discovery requests with generalized, boilerplate objections that are impermissible under the Federal Rules. The January 27, 2026 response to the Defendants' post-deposition document requests objected to virtually every request on the grounds that the requests are "vague," "impermissibly overbroad," and "unduly burdensome," and stated that the requests were made "only for the purpose of harassment". These objections lack any meaningful specificity and are repeated nearly verbatim for each request. As this Court has recognized, mere statements that discovery requests are irrelevant or burdensome are "deemed inadequate to voice a successful objection." *Aponte-Navedo v. Nalco Chemical Co.*, 208 F.R.D. 31, 36 (D.P.R. 2010). Furthermore, "[b]oilerplate, generalized objections are inadequate and tantamount to not making any objection at all." *Walker v. Lakewood Condo. Owners Ass'n*, 186

23

F.R.D. 584, 587 (C.D. Cal. 1999). Plaintiff's objections, therefore, provide no legal basis for his refusal to produce responsive documents.

Fourth, Plaintiff has engaged in obstructive conduct during depositions that has required the Court's repeated intervention. During the initial deposition on November 20, 2025, Plaintiff was so evasive that counsel was unable to complete even basic introductory questioning after ninety minutes. Plaintiff repeatedly claimed not to "understand" simple questions and refused to answer questions that were clearly within his personal knowledge, such as his prior addresses and residential history. This conduct was so extreme that the Defendants were forced to terminate the session and seek court intervention. When the deposition resumed on January 13, 2026, despite an agreement to cooperate, Plaintiff continued his pattern of claiming lack of knowledge on matters clearly within his knowledge – his own earnings – and then revealed that documentary evidence existed that he had failed to produce.

### B. Plaintiff's conduct has severely prejudiced the defendants and hindered their ability to prepare their defense.

Plaintiff's repeated discovery violations have not been isolated incidents; they represent a deliberate and ongoing effort to withhold material evidence and obstruct Defendants' case preparation. This obstruction has caused concrete and substantial prejudice to LUMA, as well as additional unnecessary costs.

The Defendants have been forced to move the Court to compel discovery on multiple occasions, expending significant resources in doing so. Plaintiff's noncompliance has caused delays that necessitated an extension of the discovery deadline from December 15, 2025 to January 30, 2026. Even with this extension, Plaintiff has continued his dilatory tactics and has failed to produce essential documentation, including the tax records and financial documentation necessary to evaluate his claim for lost earnings, one of the most significant elements of his alleged damages.

1628380143.1

Perhaps most troubling is Plaintiff's misrepresentation to the Court regarding his possession of documents. Plaintiff's representation in the December 5, 2025 Joint Motion that he did not possess documents relating to his sources of income, only to later admit under oath that he maintains electronic records of invoices, suggests a willful effort to deceive the Court and the opposing party.

Moreover, Plaintiff's counsel's retention of documents relating to the worker's compensation claim – documents directly relevant to LUMA's immunity defense – is a clear instance of deliberate concealment of material evidence. These actions have prevented the Defendants from properly preparing their defense and have wasted both the Court's and the parties' resources.

As of this filing, the discovery deadline is January 30, 2026, and critical documents remain outstanding. Plaintiff has not provided any Tax Documents despite repeated requests and a specific court order. The follow-up document requests made after the January 13, 2026 deposition have been met with blanket objections. The Defendants cannot adequately prepare for dispositive motions or trial without the discovery they are entitled to under the Rules.

### C. Sanctions are warranted, including dismissal of the claims or, in the alternative, an order compelling production with an extension of time.

Given the severity and repetitive nature of Plaintiff's discovery violations, sanctions under Rule 37 are both warranted and necessary. The Court possesses broad discretion to impose "whichever sanctions it finds just" to address noncompliance with discovery obligations. *In re Selected Somersworth Bank Cases*, 148 F.R.D. 1, 4 (D. Maine 1993). In determining the appropriate sanction, courts consider the severity of the violation, the legitimacy of the party's excuse, the repetition of violations, the deliberateness of the misconduct, prejudice to the opposing party and to the operations of the court, and the adequacy of lesser sanctions. *Alfreedi v. Bennett*, 517 F. Supp. 2d 521, 527 (D. Mass. 2007).

1628380143.1

Here, each of these factors weighs in favor of sanctions. The violations are severe – the Plaintiff has failed to produce the court-ordered Tax Documents; has misrepresented his possession of evidence, and has concealed documents directly relevant to LUMA's affirmative defenses. Plaintiff has offered no legitimate excuse for his noncompliance. The violations are repeated and ongoing, spanning from the initial discovery responses in May 2025 through the present day. The misconduct is deliberate, as demonstrated by Plaintiff's counsel's admission that documents relating to the worker's compensation claim were intentionally withheld from production. The prejudice to the Defendants is substantial, as they have been unable to obtain evidence essential to evaluating the Plaintiff's damages claims and to supporting their affirmative defenses. Finally, the Court has already attempted lesser remedies, including orders to meet and confer, specific orders to produce Tax Documents, and extensions of time, all of which have failed to secure Plaintiff's compliance.

Notably, "disobedience of court orders, in and of itself, has been held to constitute extreme misconduct warranting dismissal as a discovery sanction." *Alfreedi*, 517 F. Supp. 2d at 527. Plaintiff's failure to comply with the Court's November 17, 2025 order requiring production of Tax Documents, combined with his ongoing pattern of obstruction and misrepresentation, constitutes the type of misconduct that justifies dismissal.

LUMA, therefore, respectfully requests that the Court dismiss Plaintiff's claims with prejudice pursuant to Federal Rule of Civil Procedure 37(b)(2)(A)(v). In the alternative, if the Court determines that a lesser sanction is appropriate at this time, LUMA requests that the Court issue an order:

1. Compelling Plaintiff to produce, within five (5) days, all documents responsive to the Defendants' outstanding discovery requests, including but not limited to: (a) Plaintiff's tax returns and tax documentation for the five years preceding the incident alleged in the

Complaint; (b) all invoices, contracts, and records relating to Plaintiff's earnings before and after the incident; (c) all documents relating to the worker's compensation claim referenced in Plaintiff's deposition; and (d) all other documents identified in Defendants' January 16, 2026 requests.

2. Extending the discovery deadline to allow Defendants adequate time to review the produced documents and, if necessary, conduct additional discovery, including a further session of Plaintiff's deposition.

3. Awarding Defendants their reasonable attorneys' fees and costs incurred in bringing this motion and in addressing Plaintiff's discovery violations throughout these proceedings. Should Plaintiff continue to refuse to comply with discovery, LUMA reserves the right to seek further sanctions, including dismissal with prejudice.

## V. CONCLUSION

For the reasons set forth above, Plaintiff has engaged in a persistent pattern of discovery abuse that has significantly prejudiced Defendants and undermined the orderly administration of this case. Plaintiff has failed to produce court-ordered documents, has misrepresented his possession of evidence, has deliberately withheld documents relevant to LUMA's defenses, and has obstructed the deposition process. These violations warrant sanctions under Rule 37, including dismissal of Plaintiff's claims. In the alternative, LUMA requests an order compelling production and an extension of the discovery deadline, together with an award of attorneys' fees and costs.

**WHEREFORE**, LUMA respectfully requests this Court to issue an order dismissing the Complaint, given the repeated instances of the Plaintiff interfering with discovery. In the alternative, LUMA requests an order compelling McBride to fully respond to the *outstanding*

1628380143.1

*discovery requests*, with any other and further relief it deems appropriate, including an extension of time to complete discovery and an award of attorneys' fees and costs.

**RESPECTFULLY SUBMITTED**.

**WE HEREBY CERTIFY** that, on this date, we electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of the filing to the case participants appearing in the system.

In San Juan, Puerto Rico, this 30th day of September, 2025.



**DLA Piper (Puerto Rico) LLC**
500 Calle de la Tanca, Suite 401
San Juan, PR 00901-1969
Tel. 787-945-9122 / 787-945-9106 / 787-945-9134
Fax 787-236-0476 / 939-697-6141 / 939-731-4012

MARGARITA MERCADO ECHEGARAY
USDC-PR No. 228901
margarita.mercado@us.dlapiper.com

/s/Mariana Muñiz Lara
Mariana Muñiz Lara
USDC-PR No. 231,706
mariana.muniz@us.dlapiper.com

/s/Daniel Brown Sáenz
Daniel Brown Sáenz
USDC-PR No. 229601
daniel.brown-saenz@us.dlapiper.com

1628380143.1