**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF PUERTO RICO**

| | |
|---|---|
| DANIEL M. MC BRIDE, | CIVIL NO. 24-1554(MAJ) |
| Plaintiff | |
| v. | |
| LUMA ENERGY LLC, ET AL | PLAINTIFF DEMANDS TRIAL BY JURY |
| Defendants | |

**PLAINTIFF'S MOTION TO STRIKE**
**DEFENDANTS' FILING FOR FAILURE TO OBTAIN LEAVE OF COURT TO EXCEED**
**PAGE LIMIT; AND ALTERNATIVELY, IN OPPOSITION TO MOTION TO COMPEL**
**AND/OR REQUESTING DISMISSAL OF ALL CLAIMS FOR FAILURE TO COMPLY**
**COOPERATE WITH DISCOVERY AND COMPLY WITH COURT ORDERS**

TO THE HONORABLE COURT:

Comes now plaintiff, Daniel McBride ("McBride"), through the undersigned attorney, and respectfully states and prays as follows:

1)    On January 30, 2026, the Luma defendants filed their "Emergency Motion to Compel Discovery and/or Requesting Dismissal of All Claims for Failure to Comply Cooperate with Discovery and Comply with Court Orders" ("Motion to Compel") (Docket 116) seeking dismissal of plaintiff's complaint due to Mc Bride's alleged lack of cooperation in discovery proceedings, for sanctions or to extend the discovery cutoff.

2)    Luma's Motion to Compel (Docket 116) ought to be denied outright and stricken from the record, for failure to comply with Local Rule 7(e) that limits dispositive motions to 25 pages, and non-dispositive motions to 15 pages, unless there is prior leave of the Court.

1

3) The violation or failure to comply with the local rules may entail sanctions. <u>Local Rule 1(e).</u>  Sanctions, including the striking of filings, is appropriate when parties disregard local rules: *United States v. Díaz-Villafañe*, 874 F.2d 43, 46 (1st Cir. 1989) (local rules "designated to be followed"); *Méndez-Bermúdez v. Rodríguez*, 540 F. 3d, 31, 36 (1st Cir. 2008) (district court may strike or disregard non-compliant filings); *Air Line Pilots Ass'n v. Precision Valley Aviation, Inc.*, 26 F.3d 220, 224 (1st Cir. 1994) (district courts have "broad discretion" to enforce local rules and may refuse to consider non-compliant filings). *Mariani-Giron*, 945 F.2d 1, 1991 WL 174339. Defendants, who are seasoned federal practitioners, ought to be familiar with the Local Rules and must comply with them or face its consequences.

4) Allowing oversized filings without prior authorization disrupts the orderly management of the docket and disadvantages Plaintiff by requiring a response to an unauthorized oversized brief and incentivizes non-compliance with established procedural rules

5) For the foregoing reasons, McBride respectfully requests that this Honorable Court strike defendants Luma's Motion to Compel for failure to comply with Local Rule 7 (d) denying the relief requested; in the alternative, plaintiff hereby submits his opposition on the merits.

## II. DEFENDANTS FAILED TO MEET AND CONFER IN GOOD FAITH AS REQUIRED BY RULE 37(a)(1) AND LOCAL RULE 26(b)

6) Defendants' Motion to Compel is procedurally defective, legally unsupported, and factually misleading. Once again, defendants disregard the command of the Local Rules by failing to comply with Local Rule 26(b).  This rule provides that "[A] judicial officer shall not consider any discovery motion that is not accompanied by a certification that the

2

moving party has made a reasonable and good-faith effort to reach an agreement with opposing counsel on the matters set forth in the motion. An attempt to confer will not suffice." Needless to say, Luma's motion contains no certification because defendants made no attempt to confer with opposing counsel and proceeded to file their motion.

7) The Luma defendants: (1) failed to meet and confer in good faith as required by **Fed. R. Civ. P. 37(a)(1)**, (2) attempted to impose an unauthorized **10-day deadline** for responses to Requests for Production of Documents in violation of **Rule 34(b)(2)(A)**, (3) filed their motion **prematurely**, before the expiration of the 30-day period mandated by the Federal Rules, (4) demanded documents that Plaintiff does not possess, does not control, and cannot legally obtain, (5) sought documents they could have obtained directly from the proper source, and (6) ignored the fact that Plaintiff had already produced a substantial volume of documents **before** the motion was filed.

8) Defendants' motion was filed in bad faith to harass and not because of a legitimate discovery dispute.  As we will demonstrate below defendants' motion is devoid of merit and ought to be denied.

### THE FACTS AND THE SEQUENCE OF EVENT

9) On October 9, 2025, the parties scheduled Plaintiff's deposition for October 31, 2025, at 10:00 a.m.

10) On October 30, 2025, Mc Bride provided defendants additional and/or supplemental discovery responses.

11) On October 30, 2025, at or about 17:12, defense counsel cancelled Mc Bride's deposition. See Motion for Protective Order (Dkt 91, page 3), and it was rescheduled for November 30, 2025.

12) On November 20, 2025, Plaintiff connected for his virtual deposition through his cellular phone after taking the day off his work (See Docket 91).

13) McBride was alone in his private truck in a secure location. Plaintiff is unaware of any rule that bars a deponent from connecting for his virtual deposition using his cellular telephone. Nor plaintiff aware of any rule that requires deponent to be inside a building for the taking of his virtual deposition. Moreover, knowing that this was a virtual deposition, defendants did not provide instructions.

14)With Mc Bride's deposition underway, defendants **unilaterally stopped** the proceeding arguing a host of unjustifiable grounds. For instance, defendants argued that Mc Bride was connected through his **mobile phone**. Without evidence, counsel Brown alleged that he believed that Mc Bride was under the influence, smoking marihuana and without mental capacity to answer his questions. Needless to say, McBride was very upset as he felt discriminated because he is Black, (See Email dated November 27, 2025, **Exhibit 1).**

15) On the same day defendants stopped Mc Bride's deposition, they filed their Motion Requesting Order and Sanctions Relating to the Plaintiff's Deposition (Docket 90).

16) In response thereto, Plaintiff filed his Motion for Protective Order (Docket 91).

17)In connection with these motions, on December 2, 2025, the Court ordered the parties to meet and confer and to file by December 5, 2025, a joint informative motion on any pending discovery dispute.

18)On December 4, 2025, defendants deposed CPA Jorge Rodríguez at D L Piper's office in Old San Juan. Before the start of Mr. Rodríguez's deposition, the undersigned

4

counsel hand delivered to defense counsel Brown, **Form 4506-T-Request for Transcript of Tax Return (See Exhibit 2-Confidential Document Attached).**

19) In compliance with this Honorable Court's order, on December 5, 2025, the parties filed a Joint Motion in Compliance. Docket 100.  Regarding plaintiff's income and their source defendants stated:

> "…d. Nevertheless, the controversy as to the documents showing the Plaintiff's sources of income for the five years prior to the accident continues to exist.
> e. To that extent, the Plaintiff has stated that he has requested this information from the Internal Revenue Service. **The parties are currently awaiting the production of such information and documents.**

20) On December 5, 2025, Luma filed a Memorandum in Opposition to Plaintiff's Motion to Move to a Protective Order (Docket 101). On 12/05/2025, Plaintiff filed a Memorandum in Opposition to Defendant Motion to Compel and/or Sanctions (Docket 102).  After holding a virtual hearing on the pending motions, the Court entered its minute order stating: Defendant will provide Plaintiff with either the audio recording or a transcript of the deposition by **December 17, 2025**. Plaintiff must review the audio recording or transcript by **December 18, 2025**. Parties to file a joint informative motion by **December 19, 2025**, to notify the Court whether there are still outstanding issues or if an agreement has been reached. If the parties are unable to resolve the matter, they must also submit the audio recording or transcript of the deposition to the Court by **December 19, 2025**. See Dkt. 104.

21) On December 15, 2025, the parties filed their Joint Informative Motion Regarding the Taking of Plaintiff's Deposition The parties informed the Court on paragraph six (6) that: Immediately following the hearing, the parties conferred to attempt to resolve the

5

controversies surrounding the Plaintiff's deposition. To that extent, and after several discussions, the parties have agreed to the following:

    a. The Plaintiff's deposition will be taken on **January 13, 2025**, subject to the following stipulations:

        i. The deposition will be held by videoconference, which will be arranged by the Defendant.

        ii. The Plaintiff will take the deposition from a computer with a screen that will allow him to review documents that are shared during the deposition.

        iii. The Plaintiff will cooperate with the deposition and answer questions within his personal knowledge.

**After considering these agreements, the parties request that the Court deem the Motion Requesting Order and Sanctions as well as the Motion for Protective Order as moot.** See Dkt. 107.

22) McBride's deposition was taken remotely on **January 13, 2026**, and the Magistrate Judge on call entered a Minute order ruling on a Discovery dispute that arose during the deposition.

    a. On the second call, counsel for LUMA requested that Plaintiff's counsel be ordered to produce documents related to a workers' compensation claim that Plaintiff had submitted and that had not been disclosed as part of the discovery. Counsel for defendant intended to ask Plaintiff questions about said claim. In response, counsel for Plaintiff argued that the documents were irrelevant, particularly because the claim had been denied. In any

6

event, Plaintiff's counsel posited that such was not the way to request a document; that he would gladly produce the documents through a formal written request.

b. The Court ordered counsel for Plaintiff to produce the documents immediately so that counsel for the Defendant could examine them and use them as part of the deposition.

23) **On January 16, 2026, without a Court's leave Luma sent an email to Plaintiff:**

Dear Counsel,

As a follow-up to the Plaintiff's deposition held this week, below you will find our **requests corresponding to the testimony provided by the Plaintiff:**

1. Review and identify tax records to determine if anyone other than Britney Smalls has prepared tax returns for the Plaintiff.
2. Review and identify tax records to determine which, if any, tax returns have been prepared and submitted by Britney Smalls for the Plaintiff.
3. Produce invoices generated by the Plaintiff, paystubs, contracts and communications with contracting companies that would show work from 2022 onwards in records held by the Plaintiff, including his email and physical records of work performed.
4. Review telephone records to determine when the Plaintiff was initially contacted by Don Durell for the work opportunity in Puerto Rico, installing devices in vehicles operated by LUMA.
5. Produce any written contract held between the Plaintiff and SB Mobile for work to be performed in Puerto Rico, installing devices in vehicles operated by LUMA.
6. Review records to determine the name of the Hostel where he stayed on his first night in Puerto Rico and produce any supporting documentation.
7. Review and produce any record relating to the flight taken by the Plaintiff to leave Puerto Rico after the accident alleged in the Complaint, particularly to determine the date in which the Plaintiff left Puerto Rico.
8. Review emails and produce any documentation relating to the potential appeal of the denial of the Worker's Compensation claim no. 20241230040.
9. Review and produce bank records that determine the date in which the Plaintiff returned from Colorado Springs to Arizona after spending time taking care of his mother (a period which began around August of 2024).
10. Review and produce records that show the date in which the Plaintiff lost his health insurance.
11. Review and produce records that show when the Plaintiff moved from Arizona to Texas.

7

12. Review and produce records that show when the Latonya Lake moved from Arizona to Texas.
13. Review and produce records that show the date in which he returned to work in November or December of 2024.
14. Review and produce all invoices prepared by the Plaintiff for work performed from November 2024 to the present, including work performed for S. Harris, Inc.
15. Review and produce al 1099 forms issued by S. Harris Inc. for the Plaintiff for the years 2022, 2023, 2024 and 2025 (if available).
16. Review and produce all written communications relating to the contracting of his services for Puerto Rico.
17. Review and produce all written contracts and policies with companies for the contracting of his services for Puerto Rico.
18. Review and produce all records and information relating to the scheduling of work to be performed in Puerto Rico.

**Please produce these documents in the following ten (10) days, in order to determine any need to schedule a further session of the Plaintiff's deposition.**

**(See Exbihibit 3).**

24) On that same date, defendants' followed up with another email:

Dear Counsel,

During the month of December 2025 you made representations that the Plaintiff had requested from the Internal Revenue Service a copy of his tax returns and tax forms for the past five years. This, in response to the request that the plaintiff produce his tax returns for the stated period. As of this date, we have not received any information relating to such request, nor have we received the requested documentation. We kindly request that you provide us with the copy of the documentation or update us on its status in the next five (5) days.

Daniel

Daniel Brown Sáenz
Associate

(**See Exhibit  4).**

25)    On that same date, counsel responded to defense counsel's email:

Dear brother counsel

Good afternoon.

8

In today's date my house electrical system including the meter and all items attached to it exploded as Luma change the meter without our Knowledge so I am handling this emergency as I am without power since yesterday without internet connection nor generator as the transfer switch also got fire. 🔥

I will be in contact with you shortly.

Thanks"

(**See Exhibit 5**).

26) Surprisingly, on **01/23/2026,** counsel Brown sent the following email:

Dear Counsel,

We hope this communication finds you well. We have not received any response to the attached communications which were sent last week, all of which include different requests for information and documentation that continue outstanding in the above referenced matter. We kindly ask that you provide responses early next week in order to determine any necessary additional coordination prior to the discovery deadline. If this is not feasible, we are amenable to requesting a joint extension of the deadline to allow the plaintiff to comply with the outstanding discovery requests.

Cordially,
(See **Exhibit 6**)

27) On **01/27/2026**, Plaintiff submitted defendant an email informing: "

**Dear counsel:**

**Good morning.**

**Please find attached the documents produced by Plaintiff related to your request.**

**This email is sent with full reservation of rights and shall not be construed as a waiver of any objection regarding defendants' supplementary request of production of documents.**

**Please confirm receipt of this email.**

**Cordially,**

**The email contained more than 40 documents related to defendants' email.**

**(See Exhibit  7).**

28) On January 27, 2026, Plaintiff sent a letter via email to defendants (See **Exhibit 8)**.

On January 29, 2025, Plaintiff sent an email to defendants.

Dear counsel:

Good afternoon.

First, other than your threats to move to dismiss, we have not received an amended request that takes care of the objections we have brought up and/or **any invitation to discuss it in good faith.**

Second, you have only allowed Plaintiff a very limited time to produce documents which most of them you could have obtained through other means, and Plaintiff has provided you a lot of emails and communications in response to your request which has made them available to you.

Third, your continued abusive threats in this case are not proper so we kindly request you to refrain from your threats.

Should you need to discuss this matter further as required per FRCP, we will be doing it through a zoom call that shall be recorded at all times, or transcribed.

Cordially,

Francisco L. Charles,

(**See Exhibit  9**).

29)On **January 30, 2026**, Plaintiff sent defendant another email containing Mr. McBride's flight booking and purchase receipt after his departure on 04/26/2024 (See **Exhibit 10**).

30)On January 30, 2026,or about 10:06 A.M. Plaintiffs sent another email to defendant:

Dear Mr. Brown:

Good morning.

Please find the email below which is related to information already provided by plaintiff before his deposition including information provided by Plaintiff Mr. McBride related to:

1) Texas Leases Contract 2) Document from Blue Cross Shield (Latonya Lake) CERTIFICATE OF GROUP CREDITABLE COVERAGE

9. Arrived to Colorado on 8/17/24. Left on 8/18/24. The Surgery for mom was rescheduled. Went back for new surgery date on 10/9/24 and returned back to Arizona on 10/28/24.

10. Insurance coverage was canceled on 9/1/24 , due to LaTonya finding a new job. Attached is a letter from Blue Cross Blue Shield with coverage information.

11. I moved a couple weeks after LaTonya April

12. LaTonya moved to Texas April 17, 2025. Attached is a lease and job offer letter.  **(Which is confidential and private according to the document)**

Flight to Puerto Rico on April 11, 2024. Returned April 26, 2024

(**See Exhibit 11**)

31)**Surprisingly On 01/30/2026,** Defendants filed an Emergency Motion to Compel and Motion for Sanctions to Dismiss of All Claims against Defendants (Docket 116).

11

**DEFENDANTS' MOTION TO COMPEL IS PREMATURE AND OUGHT TO BE DENIED FOR VIOLATING THE FED. R. CIV. AND THE LOCAL COURT RULES**

32) Under Rule 34(b)(2)(A), a responding party has **30 days** to serve responses and objections to Requests for Production. Until that 30-day period elapses, there is no "failure to respond" within the meaning of Rule 37(a), and therefore no basis for a motion to compel.  In the instant case, there is neither a Court order, nor a stipulation by the parties to shorten the 30-day term granted by Rule 34 (b)(2)(A), therefore, Luma's motion is premature and should not be entertained.

33) Luma has also breached the certification requirement of Rule 37(a)(1) that requires it  to certify   that it has **"in good faith conferred or attempted to confer"** with the opposing party before filing a motion to compel. Local Rule 26(b) is even stricter by providing: A judicial officer **shall not consider** any discovery motion that is not accompanied by a certification that the moving party has made a reasonable and good-faith effort to reach an agreement with opposing counsel on the matters set forth in the motion. **An attempt to confer will not suffice.** (emphasis supplied).

34) The Defendants made **no effort whatsoever** to meet and confer with Plaintiff before the filing of their Motion to Compel; they did not request a conference, neither made a phone call or attempt to resolve the issue informally even though the undersigned requested a conference **(See Exhibit 10 ),** they just chose to disregard their obligation to wait for the 30 day term established in Rule 34(b)(2)(A) to produce documents, and their obligation to  confer before filing their discovery motion.

## III. <u>DEFENDANTS' 10-DAY DEMAND IS INVALID UNDER RULE 34(b)(2)(A)</u>

35) Rule 34(b)(2)(A) provides: **"**The party to whom the request is directed must respond in writing within 30 days after being served or -if the request was delivered under

12

Rule 26(d)(2)-within 30 days after the parties' first Rule 26(f) conference. A shorter time may be stipulated to under Rule 29 or be ordered by the Court.**"**

36) Defendants Luma unilaterally attempted to shorten this period to **10 days**, a deadline that has **no legal effect** with the only purpose to harass Plaintiff and in his continued violation of the Federal Rules of Civil Procedure (**See Exhibit 3)** demanding a deadline of **10 days to produce documents**.  Only the Court or a stipulation between the parties may modify the response period. A party cannot be compelled to comply with a deadline that contradicts the Federal Rules.

37) Because the 10-day demand was invalid, there was no failure to respond, and therefore no basis for a motion to compel.

38) Furthermore, a motion to compel cannot be filed until the responding party has actually failed to respond within the time allowed by the Rules. Because Rule 34 grants 30 days, and Defendants filed their motion before that period expired, the motion is **premature**. A premature motion is procedurally defective and must be denied.

## PLAINTIFF'S MOVE TO STRIKE DEFENDANT'S DISCOVERY REQUEST AND FOR SANCTIONS FOR ABUSIVE AND HARRASING CONDUCT FURTHERMORE DEFENDANTS SEEK DOCUMENTS OUTSIDE PLAINTIFF'S POSSESSION, CUSTODY, OR CONTROL

39)Defendants' discovery conduct has crossed the line from aggressive to abusive. They demand documents that Plaintiff does not possess, does not control, and has no legal right to obtain—documents that Defendants themselves could have secured directly through routine channels or via a Rule 45 subpoena. Instead of doing so, Defendants have weaponized discovery to pressure, burden, and harass Plaintiff, despite Plaintiff's

extensive good-faith production of documents prior to the filing of Defendants' Motion to Compel.

40)On December 4, 2025, Plaintiff hand delivered to attorney Brown the Form 4506-T (dated April 2025)-Request for Transcript of Tax Return for the last five years (See Exhibit __Confidential Document Attached).

41)Defendants chose not to provide plaintiff  Form 4506-T  for his signature so that they could obtain the documents by themselves. Plaintiff submitted this form to the IRS and he has no control of their timing to produce the requested information.

42)Furthermore, on September 24, 2025, Plaintiff produced his expert report including the loss of income calculation sheet (**Exhibit 12)**.

43)In his email of November 17, 2025 (**Exhibit 13**), McBride  provided  Luma an itemized document of costs and losses suffered by plaintiff as a result  of his accident that totals **$136,806.10**. (See **Exhibit 13A)**. Likewise, Mc Bride has provided the Patient Only Claims History Itemization that reflects that that at the present Latonya's insurance medical provider has incurred in **the sum of approximately $25,000.00** ONLY in medical cost, related to Mr. McBride treatment (**See Exhibit 13B**).

44)On that same date, Plaintiff submitted a copy of the Addendum Report prepared by CPA Jorge Rodriguez explaining the basis for his calculations: "First, we should point out that, as stated in our original report, under the Methodology section of the report, the same was prepared under the laws of Puerto Rico and the jurisprudence established by the Puerto Rico Supreme Court" See page 1 of the Report (**Exhibit 14 )**...

…specifically the following cases made mention to this matter**:**

1) **Negrón vs Municipio de San Juan, 107 DPR 375, 379 (1978)**

14

2) **Suro vs ELA, 111 DPR 456, 460 (1981)**

3) **Perez Cruz vs Hospital la Concepcion 115 DPR 721, 739 (1984)**

45) Furthermore, in his report, CPA Jorge Rodriguez states that: "Although the preparer of this letter recognizes that the tax return is a tool commonly used in the assessment of a loss of profit, revenue or income; it is not even the most important document or evidence to analyze in such exercise. Due to this fact, it is important to accentuate that not only the law of Puerto Rico does not require the use of Income Tax Returns in the determination of the loss of income; but in the undersigned's opinion, such requirement or limitation to the tax returns would be a terrible mistake (only from the economic point of view) due to several points pointed out and included below:…" (At p. 2 of Expert Report **Exhibit 14**).

46) At page 3 of his report CPA Jorge Rodriguez states that "Finally, although the signatory had to work on engagements that do require the use of tax returns in order to file a claim, this limitation occurred only as a result of a specific law requiring this event. For example, in the Morris Berman Oil Spill that occurred in San Juan in 1994, the preparer's firm was retained by the Coast Guard to audit all income losses that were claimed under the Superfund Law. This Superfund Law specifically requires and legally demands that the calculation of Loss of Income takes into consideration the tax returns filed. It should be noted that this is a specific law for claims under specific circumstances and claims to the US government. In other instances that the signatory of this addendum has worked related to a loss of profit or personal injury in PR Courts, Federal Court and/or US Bankruptcy Court, such limitations has not applied." **(See Exhibit  14)**

15

47) On November 24, 2025, Plaintiff supplemented his answer to defendant with a fifth supplement to Request for Production of documents (**See Exhibit 15**), and included a document produced by Expert CPA Jorge Rodriguez. (**See Exhibit 16)**.

48) On December 3, 2025, Plaintiff  produced additional documents regarding his loss of income (**See Exhibit 17**).

49) On 12/05/2025, the Parties filed a Joint Motion in Compliance.

50)A court cannot compel a party to produce documents it does not have **and cannot legally obtain.** Defendants' motion therefore fails as a matter of law.

51)Instead of using the proper discovery mechanism—such as a subpoena under Rule 45—Defendants attempt to force Plaintiff to act as an investigator and intermediary for documents he does not control. This is not legitimate discovery. It is harassment.

52)Defendants' approach violates the principles of proportionality, fairness, and cooperation embodied in Rules 1, 26, 34, and 37.

53)It has been clearly shown that before Defendants filed their Motion to Compel, Mc Bride produced a significant amount of documents responsive to Defendants' requests. Plaintiff acted diligently and in good faith.

54) Defendants ignored the documents already produced by plaintiff; failed to acknowledge Plaintiff's efforts and file a Motion to Compel as if no production had occurred.

55) As stated on Plaintiff's letter dated **January 27, 2026 (See Exhibit 8),** before the expiration of the 30-day required by the FCR defendants' conduct is not consistent with a party seeking discovery. It is consistent with a party seeking t**o harass, burden, and pressure an opposing litigant**.

56) Defendants' refusal to review or address Plaintiff's production—combined with their failure to meet and confer—demonstrates that the motion was filed in bad faith.

57) Under Fed. R. Civ. P. 34(a)(1), a party may only be compelled to produce documents within its "possession, custody, or control." "Control" requires a legal right to obtain the documents—not speculation, convenience, or the opposing party's desire to shift its own burden.

58) Courts in the First Circuit consistently reject attempts to compel production of documents that the responding party has no legal right to obtain. Discovery is not designed to conscript one party into acting as the other's investigator, archivist, or intermediary.

59) Before Defendants filed their Motion to Compel, Plaintiff produced a significant volume of documents, including all materials within his possession, custody, or control that were responsive to Defendants' requests.

60) Defendants' Motion to Compel ignores this reality. Their insistence on pursuing documents Plaintiff cannot obtain—after receiving extensive production—demonstrates that their objective is not discovery, **but harassment.**

61) This Court has repeatedly held that discovery must be proportional, reasonable, and conducted in good faith. Defendants' conduct violates each of these principles.

62) Rule 26(g) prohibits discovery requests that are interposed for an improper purpose, including to **"harass, cause unnecessary delay, or needlessly increase the cost of litigation."** Defendants' conduct fits squarely within this prohibition.

63) Defendants violate Rule 26(g). Sanctions are mandatory unless Defendants' conduct was "substantially justified." It was not.

17

64) Additionally, under Rule 37(a)(5)(B), when a motion to compel is denied, the Court must award fees unless the motion was substantially justified. A motion demanding documents from a party who cannot legally obtain them is never substantially justified.

65) Sanctions are necessary to deter Defendants from continuing to misuse discovery as a weapon.

66) Defendants' refusal to seek the documents **from the proper source—despite having full ability to do so—renders their requests improper as a matter of law.**

67) Defendants' discovery conduct is improper, harassing, and contrary to the Federal Rules. They seek documents Plaintiff cannot obtain and could have secured directly from the proper source. Their actions warrant the Court's intervention and sanctions.

## A PARTY CANNOT BE COMPELLED TO PRODUCE IRS TAX RETURNS OR TAX FORMS THAT IT DOES NOT POSSESS, CUSTODY, OR CONTROL

68) Plaintiff certified that he has no copy of any IRS tax form from his past five (5) years. However, he did produce copy of his 1099 of the year prior the incident related to the complaint.

69) The IRS does not give taxpayers an automatic legal right to obtain copies of their returns on demand. The IRS may provide transcripts or copies only through administrative procedures, which are discretionary and not guaranteed.

70) Because the taxpayer has no legal right to compel the IRS to produce the documents, courts hold that the taxpayer does not have "control" over the documents for Rule 34 purposes.

71) This is consistent with the principle that discovery **cannot force a party to create or obtain documents it does not already possess.**

18

72) Plaintiff does not possess copies of his IRS tax returns or IRS forms, nor does he have the legal right to obtain them on demand. Under Fed. R. Civ. P. 34(a)(1), a party may only be compelled to produce documents within its "possession, custody, or control." The First Circuit defines "control" as the legal right to obtain the document, not the mere ability to request it. *Mercado v. Ritz-Carlton San Juan Hotel, Spa & Casino*, 410 F.3d 41, 44 (1st Cir. 2005); *In re New England Compounding Pharmacy, Inc.*, 2013 WL 6058483, at *7 (D. Mass. 2013). Because Plaintiff has no legal right to compel the IRS to produce his tax returns, he does not have "control" over them. Courts in this Circuit consistently hold that a party cannot be compelled to obtain documents from third parties. *Serrano-Pérez v. FMC Corp.*, 985 F.2d 625, 630 (1st Cir. 1993). The District of Puerto Rico follows this rule strictly. *Vázquez-Feliciano v. State Ins. Fund Corp.*, 2020 WL 1321533, at *2 (D.P.R. 2020). The proper mechanism for Defendants to obtain such documents is a Rule 45 subpoena to the IRS—**not a motion to compel against Plaintiff**. Defendants' attempt to force Plaintiff to obtain documents he does not possess constitutes harassment and violates Rule 26(g). Accordingly, the request must be denied (emphasized).

73) It has been shown that Plaintiff has act in good faith by requesting the IRS the information defendants could have obtained on their own but chose not to do it.

## PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION ALLEGING WITHHELD DOCUMENTS

95. Defendants' claims about a document in the Arizona Workmen Compensation Case are unsupported and contradicted by the record. The documents were not specifically requested, were voluntarily produced, and are irrelevant to any claim or defense. Defendants are not prejudiced; their accusations are merely improper litigation tactics.

19

96. The defendants' allegation does not withstand scrutiny when their discovery requests are examined. The documents in question were not expressly sought in any particular Request for Production as has been the standard in this case.

97. During Plaintiff deposition the undersigned offered to submit them through a formal request, which defendant has failed to provide, and agreed with counsel and the Magistrate Judge that he will provide it immediately.

98. Under Fed. R. Civ. P. 34(b)(1)(A), a party may only be compelled to produce documents that are described with "**reasonable particularity."** A party cannot be sanctioned—or even accused of concealment—for failing to produce documents that **were never specifically requested.**

99. The First Circuit enforces this rule strictly. *In Serrano-Pérez v. FMC Corp.*, 985 F.2d 625, 630 (1st Cir. 1993), the court held that a party cannot be penalized for failing to produce documents that fall outside the scope of the requesting party's discovery demands. Similarly, in *Mercado v. Ritz-Carlton San Juan Hotel, Spa & Casino,* 410 F.3d 41, 44 (1st Cir. 2005), the First Circuit reaffirmed that a party's production obligations extend only to documents actually requested and within its possession or control.

100. Defendants' discovery requests did **not** identify the documents at issue with any specificity. Because the documents were never requested, Plaintiff had no obligation to produce them, and Defendants' accusation of concealment is legally baseless.

101. There is no basis for sanctions, adverse inferences, or accusations of hiding evidence.

20

102. Even though the documents were never requested, Plaintiff **voluntarily produced them** once they became available. Voluntary supplemental production is the hallmark of **good-faith compliance**, not misconduct.

**103.** The First Circuit has repeatedly rejected sanctions where the party ultimately produced the documents and there is no evidence of intentional withholding. In ***Benítez-Allende v. Alcan Aluminio do Brasil, S.A.*, 857 F.2d 26, 33 (1st Cir. 1988)**, the court held that sanctions are inappropriate absent clear evidence of **bad faith**, emphasizing that **inadvertent or delayed production does not constitute concealment.**

104. Here, Plaintiff's voluntary production eliminates any conceivable basis for Defendants' accusation. Plaintiff's conduct reflects diligence and transparency. Defendants' accusation of "hiding" documents is contradicted by the record.

105. Additionally, **the documents at issue have no relevance to any claim or defense under Rule 26(b)(1).**

106. Under **Rule 26(b)(1)**, discovery is limited to relevant, proportional information. The documents at issue are **irrelevant** to any claim or defense and have **no impact** on Defendants' ability to litigate.

107. The First Circuit requires a showing of **actual prejudice** before any remedy—let alone sanctions—may be imposed. In ***García-Mir v. Meese*, 781 F.2d 1450, 1456 (1st Cir. 1986)**, the court emphasized that discovery disputes **must not be used as weapons** and that sanctions require a showing of prejudice. Likewise, in ***Young v. Gordon*, 330 F.3d 76, 81 (1st Cir. 2003)**, the First Circuit held that sanctions are inappropriate absent prejudice and a clear violation of discovery obligations.

**108.** Even assuming, arguendo, that the document in question should have been produced earlier—which is not the case, as it was never specifically requested—Defendants are unable to demonstrate any prejudice, as required under First Circuit law. Defendants had a complete and unrestricted opportunity during Plaintiff's deposition to examine him regarding the document, pose follow-up questions, discuss its contents, and pursue any relevant lines of inquiry. The First Circuit has consistently held that when the opposing party is able to address any alleged delay through deposition examination, no prejudice exists and sanctions are unwarranted. See *Young v. Gordon*, 330 F.3d 76, 81 (1st Cir. 2003) (sanctions improper absent prejudice and *clear violation of* obligations); García-Mir v. Meese, 781 F.2d 1450, 1456 (1st Cir. 1986) (courts must guard against abusive discovery accusations and require a showing of prejudice). Because Defendants questioned Plaintiff about the document during the deposition, any purported delay in production was effectively remedied, thereby eliminating any possible prejudice. Their subsequent decision to file a motion for sanctions—despite having received the necessary information during deposition testimony—indicates that the motion pertains not to discovery concerns, **but rather to harassment and litigation tactics, contrary to Rule 26(g).**

109. Defendants cannot show prejudice because the document was never requested, is irrelevant to the case at bar, and it was voluntarily produced (See Minute Entry of Magistrate Judge).

110. The First Circuit has repeatedly admonished parties for using discovery accusations as litigation weapons. See *García-Mir*, 781 F.2d at 1456.

22

111. Once again Defendants' conduct fits squarely within the type of abusive litigation practice Rule 26(g) prohibits

112. The First Circuit is unequivocal: **sanctions require willfulness or bad faith**. *Tower Ventures, Inc. v. City of Westfield*, 296 F.3d 43, 46 (1st Cir. 2002) (sanctions require willful disobedience or bad faith). *Benítez-Allende*, 857 F.2d at 33 (no sanctions where conduct is negligent or inadvertent).

113. There is no evidence — none — that Plaintiff acted in bad faith.

**PLAINTIFF'S MOTION FOR PROTECTIVE ORDER TO PREVENT IMPROPER AND HARRASSING DISCOVERY REQUESTS**

114.  Plaintiff, through undersigned counsel, respectfully moves the Court pursuant to Fed. R. Civ. P. 26(c) for a Protective Order prohibiting Defendants from compelling Plaintiff to produce documents he does not possess, does not control, and has no legal right to obtain—specifically, IRS tax returns and IRS tax forms. Mc Bride has done all he can, to wit: submit his request to the IRS. Defendants' requests violate the Federal Rules, contradict binding First Circuit authority, and constitute harassment under Rule 26(g). In support of this motion, Plaintiff states as follows:

115.  **Under Fed. R. Civ. P. 26(c), the Court may issue a protective order to shield a party from "annoyance, embarrassment, oppression, or undue burden or expense." The movant need only show "good cause," which exists where the discovery sought is improper, disproportionate, or harassing.**

116. **The First Circuit has emphasized that courts must actively prevent abusive discovery practices. García-Mir v. Meese, 781 F.2d 1450, 1456 (1st Cir. 1986).**

117. IRS procedures allow taxpayers to request copies or transcripts, but they do not create a legal right to obtain them on demand. Without a legal right, there is no "control"

under Rule 34. Defendants' refusal to subpoena the IRS directly—despite having the full ability to do so—demonstrates an improper purpose. Courts in this Circuit condemn such tactics as abusive. *García-Mir*, 781 F.2d at 1456.

118. A Protective Order is necessary to prevent further misuse of the discovery process.

119. Good cause for the Protective Order exists because Plaintiff does not possess the IRS documents other than the one already been produced; Plaintiff has no legal right to obtain them; Defendants can obtain them directly via Rule 45; Defendants' request impose undue burden and harassment. First Circuit and D.P.R. precedent squarely prohibit compelling such production.

120. Therefore, Rule 26(c) relief is therefore appropriate. Defendants' discovery requests violate the Federal Rules and binding First Circuit authority. Plaintiff does not possess the IRS documents at issue and has no legal right to obtain them. Defendants' attempt to compel production is improper and harassing. A Protective Order is necessary to prevent further abuse.

**WHEREFORE**, it is respectfully requested that this Honorable Court enter an order providing as follows:

a) Striking Defendants' improper Motion to Compel; Requesting Sanction and Dismissal of all plaintiff cause of actions for failure to comply with Local Rule 26(b)

b) Striking Defendant's improper discovery demands.

c) Denying any pending Motion to Compel related to these documents;

24

d) **DENYING** Defendants' motion in its entirety because the documents at issue were never requested with reasonable particularity under Rule 34, were not responsive to any discovery request, and were voluntarily produced once obtained.

e) **RULING** that the documents at issue are irrelevant under Rule 26(b)(1) and that Defendants suffered no prejudice whatsoever, as required by First Circuit precedent for any discovery-related remedy.

f) Issuing a Protective Order prohibiting Defendants from compelling Plaintiff to produce IRS tax returns, IRS forms, or any other documents not within his possession, custody, or control, as Mc Bride has requested these documents from the IRS;

g) Order Defendants to obtain any desired IRS documents through a Rule 45 subpoena to the IRS;

h) Awarding Plaintiff attorney's fees and costs under Rule 26(c)(3) and Rule 37(a)(5)(B) due to Defendants' improper and harassing conduct.

i) **ADMONISHING** Defendants for filing a discovery motion unsupported by fact or law, in violation of Rule 26(g), and for attempting to weaponize discovery through unfounded accusations of misconduct.

 **RESPECTFULLY SUBMITTED,**

In San Juan, Puerto Rico, this 4th day of March 2026.

I HEREBY CERTIFY that on this date, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the parties of record.

**Charles Gomez Law Office, LLC**
P.O. Box 1360
Trujillo Alto, P.R. 00977
Tel. (787)-662-0178
Fax. (787)-724-678
*/s/ Francisco L. Charles*

USDC-PR-303211
fcharleslaw@gmail.com