**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO**

| | |
|---|---|
| DANIEL M. McBRIDE<br><br>Plaintiff<br><br>v.<br><br>LUMA ENERGY, LLC; LUMA ENERGY SERVCO, LLC; CHUBB INSURANCE COMPANY; UNIVERSAL INSURANCE COMPANY; JOHN DOE; RICHARD ROE a to z; "A", "B" AND "C" INSURANCE; et. al<br><br>Defendants | CIVIL NO. 24-1554 (MAJ) |

**REPLY TO THE OPPOSITION TO THE EMERGENCY MOTION TO COMPEL**

**TO THE HONORABLE COURT:**

Come now the co-defendants LUMA Energy, LLC ("ManageCo") and LUMA Energy Servco, LLC ("ServCo") (collectively, "LUMA" or "Defendants"), through undersigned counsel, and respectfully STATE and PRAY as follows:

**I. INTRODUCTION**

Plaintiff's Opposition is yet another chapter in a persistent pattern of obstructing discovery. Ultimately, Plaintiff continues to withhold documents that are plainly relevant to the claims *he* chose to bring before this Court. The record speaks for itself: LUMA has moved the Court to compel on several occasions due to Plaintiff's continued conduct to obstruct discovery. Now, LUMA is again before the Court because Plaintiff has responded to legitimate, targeted requests with the same boilerplate objections that this Court has already found wanting. In sum, discovery in this case has already required the Court's intervention. Plaintiff has failed to comply with discovery. Plaintiff's Opposition does nothing to change these facts.

1

## II. PLAINTIFF'S DISORDERLY AND UNIDENTIFIED DOCUMENT PRODUCTION DOES NOT CONSTITUTE COMPLIANCE

Plaintiff claims that he produced "a significant volume of documents" before Defendants filed their Motion to Compel. While it is true that Plaintiff's counsel sent certain emails containing documentation between January 27 and January 30, 2026, this production is woefully insufficient. Critically, the documents were sent in a disorderly fashion, without any explanation of which discovery requests they purport to respond, without indexing or proper identification. A party's obligation is not merely to dump documents on opposing counsel. Rather, Rule 34(b)(2)(E) requires that production must be "organized and labeled to correspond to the categories in the request." Fed. R. Civ. P. 34(b)(2)(E). Plaintiff failed to do so.

Defendants cannot even confirm which requests these scattered documents purport to address, since no formal response to the requests has been provided. Sending unmarked documents via email, without identifying which request they are responsive to, does not discharge a party's discovery obligations – it compounds the obstruction.

This is not the first time Plaintiff has engaged in this exact type of conduct and it is not the first time the Court would have to instruct Plaintiff to identify each document responsive to each individual request for production. **See Docket No. 89.**

## III. THE DOCUMENT REQUESTS STEM DIRECTLY FROM PLAINTIFF'S OWN EVASIVE DEPOSITION TESTIMONY

At the heart of Plaintiff's Opposition is the contention that Defendants' January 16, 2026 document requests are "vague," "overbroad," and made "only for the purpose of harassment." Nothing could be further from the truth. Each of the eighteen document requests arise from Plaintiff's evasive testimony during his deposition, repeatedly claiming not to know the answers to questions, acknowledging that documentary evidence existed that would supply the information.

The following section establishes the correspondence between each request and the specific deposition testimony that necessitated it.

**A. Request No. 1: Tax Records to Identify Tax Preparers Other Than Brittany Small**

Plaintiff testified that he uses Brittany Small to prepare his tax documents. **See Docket No. 124-1, Deposition of Daniel McBride, p. 38.** When asked who completed his tax documents before Ms. Small, Plaintiff responded: "I'm not sure." **Docket No. 124-1, p. 38**. He also stated he was unsure about using anybody else's services. **Docket No. 124-1, pp. 41–42.** Plaintiff did testify that documents exist that would help him recall this information. **Docket No. 124-1, p. 42**. This testimony demonstrates that records exist that would identify the tax prepareds. Plaintiff's tax and financial records are relevant to calculate the damages he claims.

**B. Request No. 2: Tax Records Regarding Returns Prepared by Brittany Small**

When asked whether he filed tax returns for 2022 through 2025, Plaintiff repeatedly stated: "I don't recall" and claimed uncertainty as to "which years were filed and which weren't." **Docket No. 124-1, p. 39.** Plaintiff acknowledged that he hired Ms. Small "recently" and that he had "rehired" her, indicating prior engagement with her services. **Docket No. 124-1, pp. 40–41.**

**C. Request No. 3: Documents and Communications from 2022 Onwards**

Plaintiff testified that he generates invoices and receives payment of those invoices from companies that hire him. **Docket No. 124-1, pp. 34–35.** When asked about companies that hire him, Plaintiff stated: "I don't know, I don't recall." **Docket No. 124-1, pp. 25–29**. Significantly, although Plaintiff's counsel represented to the Court in the December 5, 2025 Joint Motion (**Docket No. 100**) that Plaintiff did not possess any documentation showing his past earnings, Plaintiff testified during his deposition that he maintains electronic records of invoices he prepared. **Docket No. 124-1, pp. 21-22, 43–44, 229**.

**D. Request No. 4: Telephone Records Regarding Contact for Puerto Rico Work**

Plaintiff testified that he was first contacted about the Puerto Rico work opportunity by "Don Durrell". **Docket No. 124-1, pp. 47–48.** However, when asked when this initial contact occurred, Plaintiff stated: "I don't know." **Docket No. 124-1, p. 50.** When asked whether the initial contact was a phone call, in writing, or in person, Plaintiff stated: "I don't know... I don't recall." **Docket No. 124-1, pp. 49–50.** However, Plaintiff acknowledged he would have to go through records to determine this information. **Docket No. 124-1, pp. 50–51.**

**E. Request No. 5: Written Contract Between Plaintiff and SB Mobile**

Plaintiff testified that his connection to the Puerto Rico project was through SB Mobile. When Defendants' counsel showed Plaintiff a contract from Elite Tech Install that had been produced by Plaintiff's counsel, Plaintiff acknowledged that this was "one amongst others." **Docket No. 124-1, p. 88.** When asked whether he had any document pertaining to SB Mobile, Plaintiff stated: "I don't know. I would have to look at all of our transcriptions and emails. I'm not sure about that." **Docket No. 124-1, p. 135.**

**F. Request No. 6: Records Relating to the Hostel Where Plaintiff Stayed**

Plaintiff testified that, upon arriving in Puerto Rico, he "stayed the night at a hostel" near San Juan Airport. **Docket No. 124-1, p. 141.** However, when asked whether he had any records of that stay, Plaintiff stated: "I'm not sure. Probably not. I don't know. Maybe on my bank statement. Maybe because I swiped. So, yes, maybe on a bank statement. I'm not sure. I'm sure I swiped for it. So, yes, it should be on my bank statement." **Docket No. 124-1, p. 141.**

**G. Request No. 7: Records Relating to the Flight Departing Puerto Rico**

Plaintiff testified that he left Puerto Rico within "a couple days" of the accident on April 24th and flew to Arizona. When asked the specific date he left Puerto Rico, Plaintiff stated: "Sir,

4

I don't know... maybe a day or two. I'm not sure." **Docket No. 124-1, p. 175.** However, when asked whether he has any record of that flight, Plaintiff affirmatively stated: "Yes. There's a record of my flight when I left Puerto Rico." **Docket No. 124-1, p. 175.**

### H. Request No. 8: Documentation as to the Workers' Compensation Claim Appeal

Plaintiff revealed that he had filed a workers' compensation claim relating to the accident. When asked whether he requested a hearing on the denial notice as permitted by Arizona law, Plaintiff stated: "I'm not sure of those terms and all of that stuff. I have no idea" and "I do not recall." **Docket No. 124-1, pp. 207-209.** The existence and denial of this workers' compensation claim is directly relevant to LUMA's affirmative defense that the incident is a work-related accident affording LUMA immunity.

### I. Request No. 9: Bank Records Showing Return from Colorado Springs

Plaintiff testified that, beginning in August 2024, he traveled to Colorado Springs to care for his mother who "had a couple surgeries." When asked when he returned to Arizona, Plaintiff stated: "I'm not sure of the exact date." **Docket No. 124-1, p. 213.** However, Plaintiff specifically identified documentary evidence that would establish this date: "I mean, my bank cards would show – eventually, there would be a transaction from Colorado Springs, and then my cards would show me back in Arizona. So, I'm sure if we had to look at those, those might give us a roundabout record of when I returned back." **Docket No. 124-1, pp. 213-214.** This is relevant because Plaintiff was not able to generate income for a reason other than the accident during the period in which he was taking care of his mother.

### J. Request No. 10: Records Showing Date Plaintiff Lost Health Insurance

Plaintiff testified that he was covered under his fiancée's (Latonya Lake's) health insurance and that he lost coverage when she changed jobs. **Docket No. 124-1, pp. 212-213.** When asked

5

about the timing of this insurance loss, Plaintiff stated: "I don't know the exact day or whatever" and indicated that the records would be with his fiancée. **Docket No. 124-1, p. 214.**

**K. Requests Nos. 11 and 12: Records of Move from Arizona to Texas**

Plaintiff testified that he moved to Texas "about four or five months ago" but could not provide an exact date. **Docket No. 124-1, p. 13.** His fiancée, Latonya Lake, moved "about two or three months prior" to him. **Docket No. 124-1, p. 221.** When pressed about documentation, Plaintiff indicated records exist, including communications with "the shipper, the guy, the people who forwarded our furniture." **Docket No. 124-1, pp. 221–222.**

**L. Request No. 13: Records Showing Return to Work in Late 2024**

Plaintiff testified that the first time he worked after the April 2024 accident was "November, December-ish" of 2024.  When asked how much time he spent on that specific project, Plaintiff stated: "No... I would have to look at my stuff." **Docket No. 124-1, p. 225.** When asked whether there were records establishing when he returned to work, Plaintiff acknowledged: "Yes. I got pictures on LinkedIn of it." **Docket No. 124-1, p. 225.** This is relevant to determine when Plaintiff was able to work again after his accident, to calculate his damages.

**M. Request No. 14: Invoices for Work from November 2024 to Present**

Plaintiff testified that his first job after the accident was with S. Harris, Inc. in 2024. **Docket No. 124-1, pp. 230-231.** When asked whether he has invoices for this work, Plaintiff affirmatively stated: "I've got invoices for every time I went out and worked." **Docket No. 124-1, p. 230.**

**N. Request No. 15: 1099 Forms from S. Harris Inc.**

Plaintiff confirmed that S. Harris, Inc. issues him 1099 forms reflecting his earnings. **Docket No. 124-1, p. 231.** When asked about the 2024 form, Plaintiff stated: "I'm sure it's somewhere. I can call them and ask them where it's at. I don't know." **Docket No. 124-1, p. 231.**

**O. Requests Nos. 16, 17, and 18: Communications, Contracts, and Scheduling**

Plaintiff testified that he exchanged text messages with Michael Fontaine from Elite Tech Install and Don Durrell from SB Mobile regarding insurance coverage and the Puerto Rico project. **Docket No. 124-1, pp. 81–85.** Plaintiff confirmed that he received emails from Elite Tech Install and Don Durrell containing information about the project. **Docket No. 124-1, pp. 81–85.** When asked about these communications, Plaintiff stated that they had been provided to his attorney. **Docket No. 124-1, p. 85.**

## IV. PLAINTIFF'S PROCEDURAL ARGUMENTS ARE MERITLESS

### A. The Motion to Compel Is Not Premature

Plaintiff argues that the Motion is premature because Defendants imposed a "10-day deadline" and filed the motion before the 30-day period under Rule 34(b)(2)(A) had expired. This argument fundamentally mischaracterizes the nature of the dispute.

The document requests at issue are not a fresh set of Requests for Production of Documents. Rather, they are follow-up requests arising from Plaintiff's deposition, seeking documents that Plaintiff acknowledged exist – documents that, in many cases, had already been requested in during discover, and that Plaintiff had failed to produce despite months of litigation.

Moreover, the discovery deadline was January 30, 2026 – the same date on which LUMA filed its Emergency Motion. Requiring LUMA to wait 30 days to move to compel production, while the discovery deadline expired, would reward Plaintiff's obstructive conduct and unnecessarily delay proceedings.

### B. Defendants Satisfied Their Meet-and-Confer Obligations

Plaintiff argues that Defendants failed to meet and confer in good faith as required by Rule 37(a)(1) and Local Rule 26(b). This argument fails to recognize that the requirements contained in

7

the aforementioned rules pertain to conferring and attempting to confer with the other party to resolve the dispute. <u>The rule contains no requirement that the parties meet in that process.</u> LUMA made sufficient attempts to resolve the disputes prior to filing the Motion.

As explained in the Emergency Motion to Compel, **immediately following the Plaintiff's written response objecting to the entirety of these requests,** LUMA contacted opposing counsel and argued that the discovery requests stemmed from Plaintiff's testimony and, as such, the objections raised were inapposite. LUMA asked Plaintiff to amend the answers and respond to the requests, but counsel for Plaintiff declined to do so. Given that Plaintiff's response was nothing more than boilerplate objections, any further attempt to confer would have been futile.

**C. The Document Requests Seek Documents Within Plaintiff's Possession or Control**

Plaintiff argues that LUMA "demand[s] documents that Plaintiff does not possess, does not control, and cannot legally obtain." This argument is contradicted by Plaintiff's own sworn testimony, as detailed above.

To be clear: Defendants are not asking Plaintiff to act as an "investigator" or "intermediary." They are asking Plaintiff to produce documents that he himself identified as existing and within his reach.

**V. PLAINTIFF'S ARGUMENTS ABOUT TAX DOCUMENTS ARE UNAVAILING**

Plaintiff devotes significant attention to arguing that he cannot be compelled to produce IRS tax returns because he does not "possess" them and has no "legal right" to compel the IRS to produce them. While LUMA acknowledges that Plaintiff may not currently possess copies of filed tax returns, the broader issue is not limited to filed returns.

First, Plaintiff's own deposition testimony reveals that he has a CPA – Brittany Small – who has prepared or is preparing his tax returns. **Docket No. 124-1, p. 38.** The records of this

engagement, including any returns prepared, drafts, or work papers, may well be within Plaintiff's control through his CPA. Plaintiff cannot hide behind a claimed inability to obtain copies from the IRS when his own tax preparer would have copies or records.

Second, the tax-related requests extend beyond filed returns. Defendants also seek 1099 forms issued by companies that hired Plaintiff, invoices Plaintiff himself testified he maintains electronically, and records of payments received. **Docket No. 124-1, pp. 43–44, 230–231.** These are documents plainly within Plaintiff's possession and control.

Finally, regarding the IRS request itself, Plaintiff claims to have submitted a Form 4506-T to the IRS to obtain tax transcripts. However, as of the date of this Reply, Plaintiff has provided no update on the status of this request, despite LUMA's January 16, 2026 email specifically asking for an update. The request for these documents has been pending for months and the Court has already intervened, determining the relevance of the petition. <u>The Court ordered Plaintiff to produce tax returns by November 21, 2025 or provide a written statement if none had been filed. That order remains unfulfilled.</u>

## VI. PLAINTIFF'S ARGUMENTS REGARDING THE WORKERS' COMPENSATION DOCUMENTS ARE CONTRADICTED BY THE RECORD

Plaintiff argues that the workers' compensation documents "were not specifically requested," were "voluntarily produced," and are "irrelevant." Each of these contentions is wrong.

First, LUMA's discovery requests broadly sought documents relating to insurance claims and claims arising from the incident, which would encompass a workers' compensation claim. More importantly, the obligation to produce relevant documents is not limited to documents that match a specific request word-for-word. A party has an ongoing duty to supplement its disclosures and discovery responses under Rule 26(e) when it learns that its prior production was incomplete.

Second, Plaintiff's characterization of the production as "voluntary" is misleading. The documents were produced only after the Court ordered their immediate production during the deposition. **Docket No. 115.** A court-compelled production is the opposite of voluntary.

Third, the claim of irrelevance is untenable. LUMA's primary affirmative defense centers on the fact that the incident alleged in the Complaint is a work-related accident subjecting LUMA to immunity. That Plaintiff himself filed a workers' compensation claim against Elite Tech Install relating to the very same accident is directly relevant to LUMA's defense. The fact that the claim was denied does not render it irrelevant; to the contrary, the existence of the claim, the basis for its denial, and any appeal thereof are all material to LUMA's defense.

## VII. PLAINTIFF'S MERITLESS REQUEST FOR SANCTIONS

Plaintiff's request for sanctions against LUMA, attorneys' fees, and a protective order is entirely without merit and should be denied. Throughout this litigation, LUMA has acted diligently by serving timely written discovery, sending detailed deficiency letters, following up when deadlines lapsed, filing motions to compel, appearing at hearings, and meeting and conferring as ordered. The obstacles to discovery have been solely attributable to Plaintiff's conduct.

Plaintiff's characterization of LUMA's discovery requests as "harassment" turns the facts on their head. Each request stems from Plaintiff's own testimony. The true "harassment" in this case has been Plaintiff's persistent obstruction of discovery, which has forced Defendants to repeatedly seek the Court's intervention, expend significant resources in doing so, and litigate what should be straightforward matters of document production.

## VIII. CONCLUSION

For the reasons set forth above, and for the reasons stated in Defendants' Emergency Motion to Compel (**Docket No. 116**), Plaintiff's Opposition fails to overcome the overwhelming

record of discovery abuse and noncompliance that has characterized this litigation from its inception. Each of the eighteen document requests at issue is directly tied to Plaintiff's own deposition testimony, where he acknowledged the existence of documents he has refused to produce. Plaintiff's boilerplate objections, disorderly production, and procedural arguments cannot excuse his failure to comply with his most basic discovery obligations.

**WHEREFORE,** LUMA respectfully requests that this Court: (1) Dismiss all claims made against LUMA for Plaintiff's repeated failure to comply with discovery; or, in the alternative, (2) Grant Defendants' Emergency Motion to Compel in its entirety and order Plaintiff to produce all documents responsive to the Defendants' outstanding discovery requests.

**RESPECTFULLY SUBMITTED.**

**IT IS HEREBY CERTIFIED** that, on this same date, a true and exact copy of the foregoing document has been electronically filed with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the legal representatives, entities, or persons registered in the system.

In San Juan, Puerto Rico, this 30th day of March, 2026.

11



**DLA Piper (Puerto Rico) LLC**
B-7 Calle Tabonuco Ste. 1501
Guaynabo, PR 00968
Tel. 787-945-9122 / 787-945-9106 / 787-945-9134
Fax 787-236-0476 / 939-697-6141 / 939-731-4012

MARGARITA MERCADO ECHEGARAY
USDC-PR No. 228901
margarita.mercado@us.dlapiper.com

*/s/ Mariana Muñiz Lara*
Mariana Muñiz Lara
USDC-PR No. 231,706
mariana.muniz@us.dlapiper.com

*/s/Daniel Brown Sáenz*
Daniel Brown Sáenz
USDC-PR No. 229601
daniel.brown-saenz@us.dlapiper.com